*1063 OPINION
By the Court,
Shearing, C. J.:
This case involves a placer gold mine in Tule Canyon, Esmeralda County, Nevada. In 1977, Oro Corporation (“Oro”), a Nevada corporation and then-owner of the mine, entered into a *1064 mining lease with lessee Robert Scarth. Oro leased its mining, mineral, water, and land (millsite) rights. In exchange, Oro received $600 and retained a “production royalty” of seven percent in all minerals extracted from the mine. The lease also contained provisions by which both lessor and lessee could terminate the agreement.
Between 1983 and 1993, the lease was subsequently individually assigned in succession to each of the real parties in interest in this case (collectively “plaintiffs”). As consideration for the various assignments, each of the plaintiffs retained a “production royalty,” “royalty interest,” or other similar interest in the mining operation tied to ongoing mineral production or mine proceeds.[1]
In late July 1993, petitioner Peke Resources, Inc. (“Peke”), then known as PW Resources, became the newest assignee of the lease by entering into an agreement with Palmetto Resources, Inc. (“Palmetto”), the last real party in interest to hold the lease interest. Like its predecessors, Palmetto retained a financial interest in mine operations as part of the consideration for the lease conveyance. The agreement also noted that TNT Corporation (“TNT”) was Oro’s successor in interest and that TNT had acquired Oro’s remaining production royalty in the mining claim.
On November 1, 1994, TNT conveyed its interest in the mine to Peke. This conveyance effectively left Peke as the lessor-owner of the mining claim, the water and mineral rights, and the millsite, as well as the last assignee of the lease.
On May 8, 1995, Peke, acting in its role as assignee-lessee of the mining lease, issued a notice of lease termination to the lessor (i. e., to itself) pursuant to the termination provision of the original lease. When the notice period expired thirty days later, Peke believed that it had extinguished all of the plaintiffs’ retained interests in the mining lease pursuant to the doctrine of “merger,” and therefore that Peke controlled an undisturbed one hundred percent interest in the mine, minerals, land, and water rights.
In September 1995, Peke entered into an option and placer agreement to sell its mining claims, mining equipment, leases, and water rights in the mine to Equistar Holding Corporation (“Equistar”) for a total consideration of $7,500,000.
On December 11, 1995, plaintiffs filed a complaint against Peke seeking, inter alia, a declaratory judgment that their respec *1065 tive interests in the mining lease had not been extinguished and that Peke had breached the lease and related contractual covenants. On July 11, 1996, plaintiffs filed a second amended complaint naming Equistar and Parry Williams, the owner of Peke, as defendants.
On October 7, 1996, Equistar filed an answer to the second amended complaint and filed a counterclaim against plaintiffs and a cross-claim against Peke. In paragraph VIII of its answer, Equistar stated that it
is entitled to have entered a decree of interpleader[2] permitting Equistar to deposit future payments under its agreement with Peke, or such proportion thereof as the Court shall determine, into Court to be held pending the rendition of final judgment whether any portion of such funds should be turned over to Plaintiffs if any of their claims have merit (which is denied) and, if so, the amount thereof ....
(emphasis added).
On November 27, 1996, plaintiffs filed a motion pursuant to NRCP 67(2) to require that the remaining purchase payments from Equistar to Peke be deposited with the court pending a final resolution of the case. By the time of the filing of that motion, Peke had already received $2,950,000 of the $7,500,000 purchase price from Equistar, and installment payments were coming due. According to plaintiffs, Peke had disposed of all purchase payments shortly after receipt. Reversing the position taken in its answer, Equistar announced that “the question of whether any money is due to Plaintiffs is disputed” and that it opposed any order requiring a deposit in court of any future purchase payments.
On January 27, 1997, the district court entered a written order directing Equistar to deposit into the registry of the court any future payments it intended to make to Peke pursuant to the placer and option agreements. The court noted, however, that its order did not preclude Equistar from exercising any contractual rights it retained to suspend payments to Peke. The written order contains no factual findings.
On February 20, 1997, Peke filed the instant petition for a writ of mandamus or prohibition challenging the district court’s *1066 authority and jurisdiction to require Equistar to deposit purchase payments with the court.

DISCUSSION

Peke contends that plaintiffs failed to meet all of the factors necessary to require a deposit under NRCP 67(2). Plaintiffs contend that the district court properly exercised its discretion in granting the motion.[3]
NRCP 67(2) provides:
When it is admitted by the pleading or examination of a party, that he has in his possession or under his control, any money or other thing capable of delivery, which, being the subject of litigation, is held by him as trustee for another party, or which belongs or is due to another party, the court may order the same, upon motion, to be deposited in court, or delivered to such party, upon such conditions as may be just, subject to the further direction of the court.
The proper application of this “deposit in court rule” has been explained by a California Court of Appeal as follows:
“The right of the court to make an order for deposit or delivery depends on the facts as shown to the court. A party to a controversy involving a right to a certain sum of money or thing cannot be required to deposit that money or thing in court unless it is either clearly admitted in his pleading or shown in some proceeding in the cause that he has himself no right to retain it and that the other party to the action is entitled to it or at least has an absolute interest in it. In all cases it must appear that the party holds the money as trustee, or that it belongs or is due to another party. If the party alleged to hold as trustee claims title or right to all or part of the funds in his possession, the court is without jurisdiction to compel him to surrender them by ordering a deposit in court, since this constitutes an issue which should not be tried in this summary manner, but one which requires a judicial determination, on the hearing of all the facts, that he has no right to the funds. If it appears from the proceedings that the right of the other party is dependent on his performance of some condition, or if the party applying for the order does not claim an immediate right to the money, or *1067 disputes the existence of the condition, the court will not order the money to be deposited before a hearing and judicial determination, in order to avoid the gross injustice of putting a party to great inconvenience before finding his view of the case to be correct.
The statute does not authorize an order unless it is shown that a party to the action actually has a fund or property in his possession or under his control. Furthermore, an order is not authorized if the fund or property is not the subject of the litigation, but its payment is merely an incident thereto dependent on the judgment to be rendered, as in the case of an action for redemption, specific performance, accounting, rescission, or the like.”
In re Elias, 25 Cal. Rptr. 739, 747-48 (Ct. App. 1962) (emphasis added) (interpreting Cal. Civ. Proc. Code § 572 which was, at that time, identical in wording to NRCP 67(2), and quoting 23 Cal. Jur. 2d, Funds and Deposits in Court, § 5, at 568-69); accord Rainier Nat’l Bank v. McCracken, 615 P.2d 469, 476 (Wash. Ct. App. 1980).
Applying section 572, the In re Elias court examined the following questions: (1) whether the party against whom the order is to be entered (“nonmovant”) has admitted that it owes any or all of the funds at issue to another party; (2) whether the nonmovant has the money in its possession; (3) whether the money is the “subject of the litigation;” and (4) whether the funds belong to or are due to another party, or the nonmovant holds the funds as trustee for another party. In re Elias, 25 Cal. Rptr. at 745. The court may only order a deposit into court if all four questions are answered in the affirmative.
This court’s decision in Florence-Goldfield Mining Co. v. District Court, 30 Nev. 391, 97 P. 49 (1908), supports the In re Elias formulation of the language in NRCP 67(2). See In re Elias, 25 Cal. Rptr. at 745 (interpreting § 3240 of the Nevada Compiled Laws, now codified as NRCP 67(2)). Moreover, it appears that Cal. Civ. Proc. Code § 572 served as the model for the Nevada rule. See 4 NCL § 8748, at 2606-07 (1930) (referring to Cal. Civ. Proc. Code § 572); see also Moody v. Manny’s Auto Repair, 110 Nev. 320, 327, 871 P.2d 935, 940 (1994) (stating that decisions of foreign courts will be used as a guide where Nevada legislature patterned statute at issue after that of the foreign jurisdiction). Accordingly, we adopt the In re Elias construction.
With respect to the first factor necessary to satisfy NRCP 67(2), Peke argues that because Equistar has not admitted that it *1068 owes the purchase payments without qualification to plaintiffs, plaintiffs have no right to have those payments deposited into court. We agree.
In the case at bar, neither Peke nor Equistar has admitted that any or all of the purchase payments are owed to plaintiffs. Indeed, both Peke and Equistar expressly denied in their respective answers the viability of plaintiffs’ claims. The record shows that plaintiffs, Peke and Equistar either directly or indirectly, claim interests in the remaining payments. There has not yet been a judicial determination of which parties are entitled to the future purchase payments under the Peke-Equistar contract. Because ownership of the funds remains in dispute, the district court should not have ordered a deposit in court pursuant to NRCP 67(2). See In re Elias, 25 Cal. Rptr. at 745[4]; see also Florence-Goldfield Mining, 30 Nev. at 400, 97 P. at 51 (lessor’s “virtual admission” that funds held by him belonged to lessee afforded district court jurisdiction to order deposit in court).
We reject plaintiffs’ arguments that district courts should have broad discretion to order deposits in court where NRCP 67(2) movants appear to have a strong likelihood of success on the merits, or where those movants allege that absent such an order they will be unable to recover any judgment received. These factors are not relevant to the NRCP 67(2) analysis. This-court’s discussion of the rule makes clear that it is meant to apply in narrow, unique situations. See generally Florence-Goldfield Mining, 30 Nev. at 396-401, 97 P. at 49-52. Plaintiffs’ use of NRCP 67(2) as a vehicle to preserve assets to satisfy a potential judgment was inappropriate.
As we have determined that the first NRCP 67(2) factor has not been met, we need not examine the remaining factors. We conclude that the district court manifestly abused its discretion in ordering Equistar to deposit with the court any future purchase payments it intends to make.[5]
*1069 Mandamus is an extraordinary remedy, and the decision as to whether such a writ petition will be entertained lies within the discretion of this court. Poulos v. District Court, 98 Nev. 453, 455, 652 P.2d 1177, 1178 (1982). A writ of mandamus is available to compel the performance of an act which the law requires as a duty resulting from an office, trust or station, NRS 34.160, or to control an arbitrary or capricious exercise of discretion. Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 603-04, 637 P.2d 534, 536 (1981). This “writ shall be issued in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law.” NRS 34.170.
We conclude that the district court manifestly abused its discretion by directing Equistar to deposit purchase payments with the court because neither Equistar nor Peke has admitted, or “virtually admitted,” that it owes money to plaintiffs. Peke has no plain, adequate and speedy remedy at law. Accordingly, we grant the instant petition and direct the clerk of this court to issue a writ of mandamus directing the district court to vacate its deposit order.
Rose, Young, and Maupin, JJ., concur.

 It appears that real party in interest Summit Minerals Management, Inc., received a royalty interest in the mine’s production without ever having been an assignee of the lease. Further, under its contract of conveyance, real party in interest Tule Canyon Gold Partners, Inc. also allegedly retained “10% of the gross sales price of monies received if [the mine] is sold.”

 Nevada interpleader provision NRCP 67(1) states:
In an action in which any part of the relief sought is a judgment for a sum of money or the disposition of a sum of money or the disposition of any other thing capable of delivery, a party, upon notice to every other party, and by leave of court, may deposit with the court all or any part of such sum or thing to be held by the clerk of the court subject to withdrawal, in whole or in part, at any time thereafter upon order of the court.

 Plaintiffs’ argument relies heavily upon out-of-state case law granting broad discretion to trial courts to compel deposits in court under rules identical to NRCP 67(1). However, Equistar did not follow through with its opportunity to utilize NRCP 67(1). Thus, that provision is not at issue and the cases cited by plaintiffs are largely irrelevant.

 In In re Elias, a subcontractor filed a breach of contract action against a general contractor and its surety. Pursuant to a motion filed by the surety, the court issued an order requiring the general contractor to deposit with the court $39,000 in contested funds. 25 Cal. Rptr. at 743. The California Court of Appeal reversed the order of the district court, stating that neither the surety nor the general contractor had admitted that the general contractor owed that money to the plaintiff. Id. at 745. Thus, the court concluded that until it had been proven by trial that such sum was in fact due, a deposit to the court pursuant to Cal. Civ. Proc. Code § 572 was inappropriate. Id. at 745-48; accord 26A C.J.S. Deposits in Court § 1(d)(2) (1956).

 During oral argument before this court, Equistar sought to introduce new evidence not contained in the record. Matters outside the record on appeal *1069 may not be considered by an appellate court and reference to such matters is improper. See Grey v. Grey, 111 Nev. 388, 390 n.1, 892 P.2d 595, 597 n.1 (1995); State, Emp. Sec. Dep’t v. Weber, 100 Nev. 121, 123, 676 P.2d 1318, 1319 (1984).