96 Cal.Rptr.2d 843 (2000)
81 Cal.App.4th 564
Clarence Lasalle ROSE, Petitioner,
v.
The SUPERIOR COURT of Los Angeles County, Respondent;
The People, Real Party in Interest.
No. B134032.
Court of Appeal, Second District, Division Six.
June 12, 2000.
As Modified on Rehearing July 12, 2000.
Review Denied October 18, 2000.
*846 Peter Gold, San Francisco, under appointment by the Court of Appeal, for Petitioner.
Lloyd W. Pellman, County Counsel, and Frederick R. Bennett, Assistant County Counsel, for Respondent.
GO Garcetti, District Attorney of Los Angeles County, George M. Palmer, Head Deputy District Attorney, Fred Macksoud and Roderick W. Leonard, Deputy District Attorneys, for Real Party in Interest.

OPINION ON REHEARING
GILBERT, P.J.
The superior court did not comply with our order that it conduct a hearing on a petition for writ of habeas corpus. We therefore must grant a writ of mandate.

FACTS
On February 3, 1996, Scott Riley and four friends met at a Long Beach bar to celebrate his birthday. During the course of the evening, they drank a considerable amount of alcohol. About 1:00 a.m., they were talking outside the bar when an African-American man and two women walked by. The two groups exchanged words.
Soon thereafter, several individuals confronted Riley's group. A man took a nine-millimeter pistol from his pocket and pointed it at Randy Borgfield. Borgfield turned and fled. More than a dozen shots were fired. Brian Borgfield, Randy's brother, was hit in the head by a nine-millimeter bullet and died. Two others were wounded.
The police conducted a photographic lineup. Three members of the Riley party identified petitioner Clarence Lasalle Rose as the assailant.
Rose was charged with murder, attempted murder, and assault. At the preliminary hearing, he was represented by the alternate public defender. Rose's defense was an alibi. Additionally, Rose claimed that the police investigator was biased. The People's case depended largely upon eyewitness identification.
Prior to trial, Rose retained two private attorneys. One was a recent California State Bar admittee who had tried only one jury trial. The other attorney had been admitted to the State Bar less than three years before. Neither attorney had ever defended a felony.
In opening statement, defense counsel told the jury, "most likely we'll be out of here in a week, which is good for you. I hope it's good for Mr. Rose." He was only half right. Closing argument followed a mere five days on the heels of opening statement.
Sandwiched in between was a brief trial and no trial brief. Two eyewitnesses testified that Rose was the person who had been walking with the two women and who had pulled a pistol from his pocket. Another witness was uncertain of the identity of the assailant. A fourth witness, intoxicated the night of the shooting, testified he *847 did not believe Rose to be the assailant. Each of these witnesses had been drinking just prior to the attack.
During summation, the prosecutor referred to gang affiliation and purportedly misstated testimony given by an alibi witness. Counsel failed to object to these arguments.
The jury deliberated for six days and ultimately convicted Rose of first degree murder, attempted murder, and assault with a firearm. He was sentenced to a term of 38 years in prison, plus 3 consecutive life terms.
Rose appealed. In addition, he submitted a petition for habeas corpus which averred that his counsel was ineffective. (People v. Pope (1979) 23 Cal.3d 412, 152 Cal.Rptr. 732, 590 P.2d 859.) The petition prayed that "this Court should grant the Petition for Writ of Habeas Corpus and reverse Mr. Rose's convictions, or in the alternative, order an evidentiary hearing." In declarations attached to the habeas corpus petition, both attorneys acknowledge numerous deficiencies.
Rose alleges his attorneys failed to: (1) conduct any pretrial investigation of prosecution witnesses; (2) challenge the photographic lineups on the ground that they were unduly suggestive; (3) use information of possible police bias garnered by the alternate public defender; (4) introduce admissible evidence of police bias at trial; (5) demonstrate a familiarity with the rules of evidence relating to hearsay and its exceptions; (6) call an expert witness on the subject of cross-racial identification; and (7) subpoena Rose's doctor.
After reviewing the record on appeal, it appeared to us that Rose's trial counsel likely failed to explore and preserve possible defenses. The allegations and declarations in Rose's petition for habeas corpus heightened our concern over the quality of his representation. We issued an order to show cause why the relief prayed for in the habeas corpus petition should not be granted. We ordered the matter returnable in respondent court.
Because the judge who presided over the Rose case had since retired from the bench, the matter was assigned to the Honorable Joan Comparet-Cassani. The court acted with alacrity and denied the petition the day after Rose's appellate attorney filed a detailed 43-page traverse. The court's terse minute order was not enlightening. It stated merely that the court had read and considered the traverse; that Rose was "unrepresented" and not present in court; and that the petition for "Habeas Corpus is denied." The court held no hearing. It made no factual findings. It left us with not so much as a hint why it ruled as it did.
Rose again sought relief from this court through a petition for habeas corpus. This required us to treat the petition as one for mandate. We then issued an order to show cause.
In a letter to this court, county counsel acknowledged that the order of July 21, 1999, did not contain a proper recital of reasons. Counsel submitted a second letter, dated August 17, 1999, in which respondent court premised its denial of Rose's petition upon his failure to allege specific facts to sustain his arguments. In its transmittal letter, counsel stated that respondent court requests that its "letter be accepted and filed as a written return."

DISCUSSION

A. The Defective Minute Order
Respondent court's order of July 21, 1999, was irredeemably flawed. As we stated in In re Moss (1985) 175 Cal.App.3d 913, 921, footnote 5, 221 Cal.Rptr. 645, "Reticent superior court judges pondering the merits of habeas corpus petitions should keep in mind that a denial without a statement of reasons is contrary to the plain requirements of California Rules of Court, rule 260(e)." A recitation of grounds aids and preserves "confidence in the decision-making process `by helping to *848 persuade the parties [and the public] that ... decision-making is careful, reasoned and equitable.' [Citation.]" (In re Podesto (1976) 15 Cal.3d 921, 937, 127 Cal.Rptr. 97, 544 P.2d 1297 [trial court required to issue a brief statement of grounds when denying an order for bail on appeal].)
In a written decision, the court "must account for its conclusions [and] there is a greater likelihood that it will carefully analyze the merits." (Leone v. Medical Bd. of Cal. (2000) 22 Cal.4th 660, 674, 94 Cal. Rptr.2d 61, 995 P.2d 191 (dis. opn. of Mosk, J.).) It also affords the petitioner the opportunity to assess whether to seek further review. (In re Sturm (1974) 11 Cal.3d 258, 268-270, 113 Cal.Rptr. 361, 521 P.2d 97 [prison board must give its reasons for denial of parole]; People v. Ramirez (1979) 25 Cal.3d 260, 276, 158 Cal.Rptr. 316, 599 P.2d 622 [inmate excluded from California Rehabilitation Center entitled to statement of reasons].) When habeas corpus is sought in an appellate court, a brief statement of reasons by the trial court aids the appellate court in its review of the merits of the petition. (In re Jackson (1985) 39 Cal.3d 464, 477, 216 Cal.Rptr. 760, 703 P.2d 100; see also Topanga Assn. for a Scenic Community v. County of Los Angeles (1974) 11 Cal.3d 506, 513-518, 113 Cal.Rptr. 836, 522 P.2d 12.)

B. August 17, 1999 Letter from the Court
The trial court tried to rectify its failure to comply with rule 260(e) of the California Rules of Court by its August 17 letter stating its grounds for denying the petition. In submitting the letter, county counsel related the trial court's message that it wished us to accept the letter as "a written return."
By filing its own return, however, the trial court assumed the appearance of an adversary rather than a neutral, even though that was not its intention. (See, Municipal Court v. Superior Court (Gonzalez) (1993) 5 Cal.4th 1126, 1129, 22 Cal. Rptr.2d 504, 857 P.2d 325; Ng v. Superior Court (1997) 52 Cal.App.4th 1010, 1016, 61 Cal.Rptr.2d 49.) We stated in Omaha Indemnity Co. v. Superior Court (1989) 209 Cal.App.3d 1266, 1273, 258 Cal.Rptr. 66, that "Judges should be umpires rather than players." Judges must strive to maintain the appearance of neutrality when their actions could be interpreted otherwise.

C. An Accurate Record
The consideration of a habeas corpus petition is more than a formal ritual or a procedural nuisance. This caveat is particularly significant here. We have remanded a habeas corpus petition for hearing in which petitioner, facing life sentences, has raised what may be meritorious contentions concerning the quality of his representation. This calls for more than a cursory review.
No doubt the trial court was aware that Rose was represented by counsel. Nevertheless, the minute order states, "defendant is not present in court and not represented by counsel." This language could lead one to make a reasonable, but apparently incorrect assumption: the trial court read the petition, return, and traverse superficially.
The county counsel explains that this is "programmed computer language," which simply means that the matter was heard in chambers, and neither Rose's counsel nor Rose were present. Only Humpty Dumpty would find this interpretation reasonable.[1] We, however, like Alice, subscribe to the more conventional view that language should say what it means. This prosaic notion is based on our abiding conviction that communication suffers when language says what it does not mean.
If the "programmed computer language" in the minute order means what county counsel suggests, then it is time to reprogram the computer. We take the minority *849 view that computers are not responsible for human mistakes and think it unlikely the computer will reprogram itself. Trial courts have the responsibility, indeed the obligation, to ensure that language appearing in their minute orders accurately reflects proceedings in their courtrooms. (See In re Moss, supra, 175 Cal.App.3d at p. 928, 221 Cal.Rptr. 645 [judge's signature below preprinted findings on a waiver form and check marks indicating waivers of constitutional rights on a docket sheet are meaningless in the face of evidence that discloses no support for these findings].)

D. Ineffective Assistance of Counsel
As Rose points out, a defendant has a constitutional right to be represented by effective counsel. (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, § 15; Gideon v. Wainwright (1963) 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799.) The trial judge has a duty "to protect the defendant's right to a counsel who is effective." (Smith v. Superior Court (1968) 68 Cal.2d 547, 559, 68 Cal.Rptr. 1, 440 P.2d 65.)
An informed tactical decision made by defense counsel does not constitute ineffective assistance of counsel. (In re Ibarra (1983) 34 Cal.3d 277, 284, 193 Cal.Rptr. 538, 666 P.2d 980.) As a corollary rule, "ineptitude or lack of industry" on the part of counsel falls well short of the mark. (In re Saunders (1970) 2 Cal.3d 1033,1042, fn. 7, 88 Cal.Rptr. 633, 472 P.2d 921.) "`[W]hile acknowledging the wide latitude and discretion necessarily vested in trial counsel in the area of tactics and strategy, we stress that the exercise of that discretion must be a reasonable and informed one in the light of the facts and options reasonably apparent to counsel at the time of trial, and founded upon reasonable investigation and preparation.' [Citation.]" (In re Hall (1981) 30 Cal.3d 408, 426,179 Cal.Rptr. 223, 637 P.2d 690.)
Often the "Great Writ" is abused. (McCleskey v. Zant (1991) 499 U.S. 467, 468, 111 S.Ct. 1454, 1456, 113 L.Ed.2d 517, 518 (dis. opn. of Marshall, J.); In re Clark (1993) 5 Cal.4th 750, 769, 21 Cal.Rptr.2d 509, 855 P.2d 729; In re Gatts (1978) 79 Cal.App.3d 1023, 1035, 145 Cal.Rptr. 419.) Many claims of ineffective assistance of counsel arise from tactical decisions rather than from the denial of fundamental rights. (People v. Knight (1987) 194 Cal. App.3d 337, 344, 239 Cal.Rptr. 413 [defendant's "buyer's remorse" is not grounds to set aside a plea]; People v. Potter (1978) 77 Cal.App.3d 45, 49, 143 Cal.Rptr. 379 [defendant accused his defense attorney of running for the office of district attorney].) "In determining whether a trial lawyer performed in a manner to be expected of reasonably competent attorneys acting as diligent advocates, appellate courts should be cautious of the apparent intellectual acuity gained by hindsight. Although Monday morning quarterbacking may be stimulating, it is inappropriate when judging lawyers who deal in the demanding and uncertain turf of the courtroom...." (People v. White (1981) 118 Cal.App.3d 767, 778, 173 Cal.Rptr. 575.)
It is therefore no surprise that not many applications claiming ineffective assistance of counsel are granted. "Nor will the court consider on the merits successive petitions attacking the competence of trial or prior habeas corpus counsel which reflect nothing more than the ability of present counsel with the benefit of hindsight, additional time and investigative services, and newly retained experts, to demonstrate that a different or better defense could have been mounted had trial counsel or prior habeas corpus counsel had similar advantages...." (In re Clark, supra, 5 Cal.4th at p. 780, 21 Cal.Rptr.2d 509, 855 P.2d 729.)
Courts, nonetheless, must not assume that all petitioners in habeas corpus proceedings are attempting to "throw dust in [their] eyes ... or hoodwink a judge who is not over-wise," and to perjure *850 themselves "as a matter of course."[2] Just as a theater critic must see the play before writing a review, judges must carefully consider the evidence before deciding a case. The lifeblood of our judicial institutions depends upon judges rendering decisions that are the product of a reasoned and objective view of the law and the facts.
After reading the petition and return, we are left to ponder questions that were not discussed by respondent court. The following concerns are by no means exhaustive but are offered by way of example:
The surviving members of the Riley party were the only eyewitnesses to the crime. As such, they were the key prosecution witnesses. Were there sound tactical reasons for defense counsel not to conduct any pretrial investigation of possible bias, intoxication, and confusion on the part of the prosecution's identification witnesses?
As part of their meager defense, Rose's attorneys offered lay testimony that Rose had been shot in the leg on a prior occasion, and thus walked with a noticeable limp. Although this testimony was helpful to Rose, its value could have been enhanced had they called Rose's doctor. The doctor was prepared to testify that a person in Rose's physical condition could not have committed the murder and then escaped on foot. If after reasonable investigation a defense attorney determines that defense witnesses are untrustworthy, unsavory, or unconvincing, he or she may make an informed decision not to call them. (In re Hall, supra, 30 Cal.3d at p. 417, 179 Cal.Rptr. 223, 637 P.2d 690.) Did the defense make an informed decision when it failed to have Rose's doctor attest to Rose's physical condition?
"Although the state and its representatives have no interest in convicting innocent persons, it would be unrealistic to assume that once charges have been levelled [sic] against a specific individual the police will search as zealously for exculpatory evidence as they will for information that might lead to conviction." (In re Hall, supra, 30 Cal.3d at p. 425, 179 Cal. Rptr. 223, 637 P.2d 690.) Should counsel have investigated for evidence of alleged bias by the Long Beach Police Department?
"`The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification.'" (People v. McDonald (1984) 37 Cal.3d 351, 363, 208 Cal.Rptr. 236, 690 P.2d 709, citing United States v. Wade (1967) 388 U.S. 218, 228, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149, 1158.) Stress and cross-racial factors can affect the accuracy of identification. (McDonald, at p. 362, 208 Cal.Rptr. 236, 690 P.2d 709.) For purposes of impeachment, should the defense have hired an expert witness to testify to the difficulties of cross-racial identifications?
"Since an objection to the identification evidence would have been adjudicated outside the presence of the jury," (People v. Nation (1980) 26 Cal.3d 169, 179, 161 Cal. Rptr. 299, 604 P.2d 1051), did the defense explore the possibility of challenging the photographic lineup as being unduly suggestive, and move to exclude? If not, what possible tactical reason could the defense have had for failing to do so?
These questions leave us to finally ask whether defense counsel's alleged failures deprived Rose of a potentially meritorious defense.
The petitioner in a habeas corpus proceeding bears the initial burden of demonstrating that he or she has been deprived of effective assistance of counsel. (People v. Haskett (1990) 52 Cal.3d 210, 248, 276 Cal.Rptr. 80, 801 P.2d 323.)
Rose recited specific facts in his petition and thereby made a threshold showing of ineffective assistance that is material and sufficiently adequate. (People *851 v. Duvall (1995) 9 Cal.4th 464, 475, 37 Cal.Rptr.2d 259, 886 P.2d 1252; see also, e.g., In re Hitchings (1993) 6 Cal.4th 97, 24 Cal.Rptr.2d 74, 860 P.2d 466; In re Marquez (1992) 1 Cal.4th 584, 3 Cal.Rptr.2d 727, 822 P.2d 435; In re Cordero (1988) 46 Cal.3d 161, 249 Cal.Rptr. 342, 756 P.2d 1370; In re Martin (1987) 44 Cal.3d 1, 241 Cal.Rptr. 263, 744 P.2d 374; People v. Ledesma (1987) 43 Cal.3d 171, 233 Cal. Rptr. 404, 729 P.2d 839; In re Hall, supra, 30 Cal.3d 408, 179 Cal.Rptr. 223, 637 P.2d 690.)
The burden then shifted to the People to allege "`... facts tending to establish the legality of the challenged detention.' " (People v. Duvall, supra, 9 Cal.4th at p. 476, 37 Cal.Rptr.2d 259, 886 P.2d 1252; People v. Romero (1994) 8 Cal.4th 728, 738-739, 35 Cal.Rptr.2d 270, 883 P.2d 388.) Petitioner may respond to the return by filing a traverse in which he may deny the factual allegations set forth in the return. (Duvall, at p. 477, 37 Cal. Rptr.2d 259, 886 P.2d 1252.)
The return and traverse to the order to show cause are the means by which issues are joined and defined. (People v. Pacini (1981) 120 Cal.App.3d 877, 884, 174 Cal.Rptr. 820.) Once joined, the truth of disputed allegations may be determined through an evidentiary hearing. (People v. Duvall, supra, 9 Cal.4th at p. 478, 37 Cal.Rptr.2d 259, 886 P.2d 1252; People v. Romero, supra, 8 Cal.4th at p. 740, 35 Cal.Rptr.2d 270, 883 P.2d 388.)

E. Habeas Petitions and Evidentiary Hearings
Inexplicably, the People state that we did not order the superior court to conduct an evidentiary hearing. Moreover the court was not required to do so. It is true that not every habeas corpus petition engenders an evidentiary hearing (e.g., see People v. Romero, supra, 8 Cal.4th at pp. 739-740, 35 Cal.Rptr.2d 270, 883 P.2d 388; In re Alvernaz (1992) 2 Cal.4th 924, 945, 8 Cal.Rptr.2d 713, 830 P.2d 747); this one did. Rose's habeas corpus petition prayed for the following form of relief: "grant the Petition for Writ of Habeas Corpus and reverse Mr. Rose's convictions, or in the alternative, hold an evidentiary hearing." Our order was explicit: the People were "to show cause before the Superior Court of the County of Los Angeles, when the matter is placed on calendar, why the relief prayed for in the petition should not be granted." Respondent's choice was clear: either release Rose or hold an evidentiary hearing.
Petitions for writs of habeas corpus in the first instance may be filed in the Supreme Court or the Court of Appeal. Such petitions are ubiquitous, but orders to show cause are not. Appellate courts are not equipped to conduct evidentiary hearings. Therefore in the few petitions that require an evidentiary hearing, appellate courts often transfer the petitions to the trial court. (Cal. Rules of Court, rule 56(a)(1); In re Elias (1962) 209 Cal.App.2d 262, 264, 25 Cal.Rptr. 739; In re Hillery (1962) 202 Cal.App.2d 293, 294, 20 Cal. Rptr. 759.)
Our issuance of an order to show cause reflects a preliminary determination by this court that the allegations made by Rose, if proved, state a prima facie case for relief. "When we order the respondent to show cause before the superior court why the relief prayed for in a petition for habeas corpus should not be granted, we do more than simply transfer the petition to that court and more than simply afford the petitioner an opportunity to present evidence in support of the allegations of the petition; we institute a proceeding in which the issues of fact are to be framed and decided." (In re Hochberg (1970) 2 Cal.3d 870, 876, fn. 4, 87 Cal.Rptr. 681, 471 P.2d 1.)
The People, laboring under the mistaken notion that the trial court need not hold an evidentiary hearing, attempt to resolve the questions of competency we have raised. Some or all of these answers may prove to be correct, but at this point they highlight *852 rather than resolve disputed issues and facts.
Claims of ineffective assistance more often lend themselves to resolution in an evidentiary hearing. (In re Visciotti (1996) 14 Cal.4th 325, 335-336, 58 Cal. Rptr.2d 801, 926 P.2d 987 [referee appointed to resolve disputed factual matters of attorney incompetence]; People v. Duvall, supra, 9 Cal.4th at p. 486, 37 Cal.Rptr.2d 259, 886 P.2d 1252 [referee appointed in order "to determine the truth or falsity of ... factual allegations regarding counsel's failure to investigate and present a defense based upon petitioner's alleged diminished mental state"]; People v. Haskett (1982) 30 Cal.3d 841, 854-855, 180 Cal.Rptr. 640, 640 P.2d 776 [examination may reveal that an attorney is ignorant of the law]; In re Hall, supra, 30 Cal.3d at pp. 430-432, 179 Cal.Rptr. 223, 637 P.2d 690 [following an evidentiary hearing, defense attorney's tactical decision found to be "dubious"]; People v. Pope, supra, 23 Cal.3d at p. 426, 152 Cal.Rptr. 732, 590 P.2d 859 ["there is an opportunity in an evidentiary hearing to have trial counsel fully describe his or her reasons for acting or failing to act in the manner complained of'].)
In addition, evidentiary hearings afford counsel the opportunity to present live testimony, examine former defense counsel, orally argue the case, and respond to any concerns by the court. (See Moles v. Regents of University of California (1982) 32 Cal.3d 867, 872, 187 Cal.Rptr. 557, 654 P.2d 740; Mediterranean Const. Co. v. State Farm Fire and Cos. Co. (1998) 66 Cal.App.4th 257, 264, 77 Cal.Rptr.2d 781 [importance of oral argument].)
The increasing number of individuals serving long sentences in penal institutions pose special problems for our courts. As observed by Justice Mosk in a concurring opinion, "[T]he increasing length of prison terms for violent crime also requires a highly reliable fact finding procedure in determining guilt." (People v. Jones (1998) 17 Cal.4th 279, 321, 70 Cal.Rptr.2d 793, 949 P.2d 890.)

CONCLUSION
"Efficiency is not more important than preserving the constitutional integrity of the judicial process." (Aetna Life Ins. Co. v. Superior Court (1986) 182 Cal. App.3d 431, 437, 227 Cal.Rptr. 460.) Neither a heavy caseload nor disaffection with an appellate court order justifies the curtailment of a defendant's right to an evidentiary hearing and due consideration of his habeas corpus petition.
Although the trial court did not intend to disregard our order, the effects of the summary procedure could foster disrespect for the law and undermine the administration of justice. Rose, like Kafka's condemned prisoner, Josef K., was left to wonder, "Where was the Judge whom he had never seen?'" (Kafka, The Trial (Schocken Books ed. 1992) pp. 228-229.)
Although the trial judge is capable of hearing this matter, it is possible the appearance of impartiality may have been compromised. In the interests of justice, we therefore order that the evidentiary hearing be heard by a different trial judge. (Code Civ. Proc, § 170.1, subd. (c).)
Let a writ of mandate issue commanding respondent court to vacate its order of July 21, 1999, and hold an evidentiary hearing in conformance with the views expressed in this opinion.
The order to show cause, having served its purpose, is dissolved.
YEGAN, J., and COFFEE, J., concur.
NOTES
[1] "`When I use a word,' Humpty Dumpty said in a rather a scornful tone, `it means just what I choose it to meanneither more nor less.'" (Carroll, Through the Looking-Glass and What Alice Found There (1872).)
[2] (Gilbert, Iolanthe (1882) act I, "Lord Chancellor's Song.")