**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DEANDRE MAURICE HOWARD,
  *Petitioner-Appellant,*

v.

KEN CLARK, Warden,
  *Respondent-Appellee.*

No. 08-55340

D.C. No.
2:07-cv-2680-VAP-SH

OPINION

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted
April 5, 2010—Pasadena, California

Filed June 15, 2010

Before: Alex Kozinski, Chief Judge, Dorothy W. Nelson,
Circuit Judge, and Nancy Gertner, District Judge.*

Opinion by Judge Gertner

---

*The Honorable Nancy Gertner, United States District Judge for the
District of Massachusetts, sitting by designation.

.

## COUNSEL

Richard D. Rome, Van Nuys, California, for the petitioner-appellant.

Edmund G. Brown Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior Assistant Attorney General, Xiomara Costello, Supervising Deputy Attorney General, Viet H. Nguyen, Deputy Attorney General, Los Angeles, California, for the respondent-appellee.

## OPINION

GERTNER, District Judge:

Deandre Howard was convicted in California state court of murder and attempted murder. In this appeal of the district court's denial of his petition for a writ of habeas corpus, Howard claims that his trial counsel rendered ineffective assistance by failing to interview or elicit trial testimony from Arthur Ragland, the surviving victim of the crimes with which Howard was charged. He also contends that his attorney was ineffective in neglecting to call an expert witness on the unreliability of eyewitness identifications.

We hold that the district court correctly denied Howard's claim based on his trial counsel's failure to call an expert witness on eyewitness identifications, but erred in denying his claim that his attorney was ineffective in failing to interview or elicit trial testimony from Ragland. Since the record is not sufficiently developed to determine whether Howard is entitled to relief based on his attorney's allegedly inadequate investigation of Ragland, we remand the case to the district court for further proceedings.

### BACKGROUND

Around 8:00 p.m. on July 8, 2002, Mark Freeman and Arthur Ragland were standing outside a liquor store. A man exited the front passenger door of a white Nissan, walked

toward Freeman and Ragland, and shot them several times, killing Freeman and wounding Ragland. Although the police recovered no guns, they found ten shell casings, five each of two different calibers, near the location where the victims had been shot.

At trial, the only issue was whether Howard was the shooter. The prosecution's case relied almost exclusively on two eyewitnesses: Sergio Hernandez, an employee of the liquor store who observed the shooting while on a break, and Dina Fontaine, Freeman's former girlfriend who was down the street from the victims at the time of the shooting. Ragland, the surviving victim of the shooting, did not testify at Howard's trial.

Hernandez positively identified Howard as the shooter in a pretrial photo array, and reaffirmed his identification at trial. Fontaine's identification of the shooter was much more equivocal. Detective Donald Walthers interviewed her twice on August 29, 2002. During the first interview, Fontaine became upset and began to cry when Walthers showed her a six-photograph lineup card containing Howard's photo. She said that she could not identify anyone without her glasses, which she did not have with her at the time.

After Fontaine had retrieve her glasses, Walthers interviewed her a second time. At trial, Fontaine and Detective Walthers gave differing accounts of what occurred during this second interview. Detective Walthers testified that Fontaine identified Howard as the shooter from the photo array. Fontaine, however, denied that she positively identified Howard as the shooter; instead, she claimed that she merely told Detective Walthers that Howard and the shooter shared similar facial characteristics.

During cross-examination, Fontaine unambiguously stated that Howard was not the shooter. In response to questioning from the prosecutor, Fontaine admitted that she was in prison

on unrelated charges and knew that individuals who cooperate with the prosecution or police often face retaliation. Nevertheless, she insisted that she was not scared to testify.

Howard was the only defense witness. He denied being the shooter and testified that although he could not remember exactly where he was at the time of the shootings, he was probably at home, at work, with his girlfriend, or with his parole officer.

The trial judge instructed the jury with versions of *California Jury Instructions—Criminal* Nos. 2.91 and 2.92,[1] which

[1]Specifically, the judge instructed the jury:

The burden is on the People to prove beyond a reasonable doubt that the defendant is the person who committed the crime[s] with which he is charged. If, after considering the circumstances of the identification and any other evidence in the case, you have a reasonable doubt whether the defendant was the person who committed the crime[s], you must give the defendant the benefit of the doubt and find him not guilty.

Eyewitness testimony has been received in this trial for the purpose of identifying the defendant as the perpetrator of the crimes charged. In determining the weight to be given the eyewitness identification testimony, you should consider the believability of the eyewitness as well as other factors which bear upon the accuracy of the witness' identification, including but not limited to any of the following:

The opportunity of the witness to observe the alleged criminal act and the perpetrator of the act;

The stress, if any, to which the witness was subjected at the time of the observation;

The witness' ability following the observation, to provide a description of the perpetrator of the act;

The extent to which the defendant either fits or does not fit the description of the perpetrator previously given by the witness;

The cross-racial or ethnic nature of any identification;

provide guidance for evaluating the testimony of eyewitnesses. On the morning of the second day of deliberations, the jury announced it was deadlocked. The court asked the jurors to continue with their deliberations, which they did. The jury then returned its verdict, finding Howard guilty of the first-degree murder of Freeman and the attempted first-degree murder of Ragland.

Equipped with new counsel, Howard appealed his conviction on the grounds that his trial attorney rendered ineffective assistance by failing to call an expert witness on the unreliability of eyewitness identifications. The California Court of Appeal affirmed Howard's conviction in an unpublished decision. *Howard*, 2004 WL 2664018, at *1. Howard did not file a petition for review with the California Supreme Court.

While Howard's direct appeal was still pending, Arthur Ragland wrote a letter to Howard's appellate counsel stating that Howard was not the shooter and was thus innocent of the

---

A witness' capacity to make an identification;

Evidence relating to the witness' ability to identify other alleged perpetrators of the criminal act;

Whether the witness was able to identify the alleged perpetrator in a photographic or a physical lineup;

The period of time between the alleged criminal act and the witness' identification;

Whether the witness had prior contacts with the alleged perpetrator;

And the extent to which the witness is either certain or uncertain of the identification;

And, finally, whether the witness' identification is, in fact, a product of his or her own recollection and any other evidence relating to his ability to make the identification.

*People v. Howard*, No. B170820, 2004 WL 2664018, at *2-*3 (Cal. Ct. App. Nov. 23, 2004).

crimes of which he had been convicted. Ragland subsequently executed a sworn declaration stating:

> [O]n August 27, 2002, Detective Walthers conducted a tape recorded telephonic interview of myself—Arthur Ragland—where I refused to meet with detectives as at that time I had an outstanding parole warrant. I made a summarized statement which is included in Los Angeles Police [Department] follow up investigation. . . .
>
> Accordingly, I was evasive and non-cooperative but the truth remains DeAndre Howard never attempted to murder me neither did he murder, victim Mark Anthony Freeman.
>
> If I was made to testify in Court to these matters I would under oath and affirmation.

On November 1, 2005, Howard filed a habeas petition in California superior court. The petition raised the same claims currently pending before us on appeal. The superior court denied the petition in a brief, three-page order on December 28, 2005. Howard then filed habeas petitions with the California Court of Appeal and California Supreme Court, both of which were summarily denied without citation of authority.[2]

---

[2]As we have previously explained:

> In California, the state supreme court, intermediate courts of appeal and superior courts all have original habeas corpus jurisdiction. Although a superior court order denying habeas corpus relief is nonappealable, a state prisoner may file a new habeas corpus petition in the court of appeal. If the court of appeal denies relief, the petitioner may seek review in the California Supreme Court by way of a petition for review, or may instead file an original habeas petition in the supreme court.

*Redd v. McGrath*, 343 F.3d 1077, 1079 n.2 (9th Cir. 2003) (citations omitted).

Howard filed his federal habeas petition under 28 U.S.C. § 2254 on April 23, 2007. The district court denied the petition on January 29, 2008. On motion of the defendant, we issued a certificate of appealability under 28 U.S.C. § 2253(c) on March 25, 2009.

## DISCUSSION

### I. Governing Legal Standards

We review a district court's denial of a petition for a writ of habeas corpus raising claims of ineffective assistance of counsel de novo. *Reynoso v. Giurbino*, 462 F.3d 1099, 1108-09 (9th Cir. 2006). Any factual findings made by the district court are reviewed for clear error. *Id.*

Since Howard filed his habeas petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, he cannot be granted habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see also Woodford v. Garceau*, 538 U.S. 202, 204-07 (2003).

The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta," of the Supreme Court's decisions "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court's decision is "contrary to" this body of law if it applies a rule that contradicts the governing law articulated by the Supreme Court or arrives at a result different than that reached by the Supreme Court in a case with materially indistinguishable facts. *Id.* at 405-06.

A decision involves an "unreasonable application" of clearly established federal law if it "identifies the correct gov-

erning legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The Supreme Court has emphasized that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410. Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Instead, the court must determine whether the state court's application of Supreme Court precedents was objectively unreasonable. *Id.* at 409. Although the Supreme Court's decisions are the focus of the unreasonable-application inquiry, we may look to Ninth Circuit case law as "persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law." *Duhaime v. Ducharme*, 200 F.3d 597, 600 (9th Cir. 2000).

If after applying section 2254(d)'s "highly deferential" standard, *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), we conclude that the state court's decision was contrary to—or involved an unreasonable application of—clearly established federal law, then we review the petitioner's claim de novo. *See Frantz v. Hazey*, 533 F.3d 724, 732-37 (9th Cir. 2008) (en banc).

The "clearly established federal law" that applies in this case is the framework articulated for analyzing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Williams*, 529 U.S. at 390 (applying *Strickland* as the "clearly established federal law" that governed petitioner's ineffective-assistance claim). In *Strickland*, the Supreme Court recognized that the right to counsel guaranteed by the Sixth Amendment includes "the right to the effective assistance of counsel." 466 U.S. at 686 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). However, the Court defined this right in terms of the "crucial role" that attorneys play in ensuring that our adversarial system pro-

duces "just results." *Id.* at 685. Thus, the Court held that an attorney's inadequate representation does not rise to the level of a constitutional violation unless the deficiency so infected the adversarial process as to raise doubts about the reliability of the proceeding's outcome. *Id.* at 687.

*Strickland* distilled these principles into a two-prong test. To prevail on a claim of ineffective assistance of counsel, a defendant must prove (1) that his counsel's performance was deficient, and (2) that he suffered prejudice as a result. *Id.* To be deficient, an attorney's conduct must fall below an "objective standard of reasonableness" established by "prevailing professional norms." *Id.* at 687-88. To demonstrate prejudice,

> [t]he petitioner need not show that the deficient performance more likely than not altered the outcome of the case, but must demonstrate only a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Hart v. Gomez*, 174 F.3d 1067, 1069 (9th Cir. 1999) (quoting *Strickland*, 466 U.S. at 694).

II. *Howard's Attorney's Failure To Interview, Investigate, or Elicit Trial Testimony from Ragland*

*A.*

Howard claims that his trial attorney rendered ineffective assistance by failing to interview, investigate, or elicit trial testimony from Arthur Ragland, the surviving victim of the July 8, 2002 shooting with which he was charged. He alleges that he urged his trial attorney to interview Ragland and call him as a witness at trial, but the attorney steadfastly refused to do so. If his attorney had fulfilled his request, Howard contends, Ragland would have proclaimed his innocence at trial.

Ragland's testimony would have been a powerful blow to the prosecution's case, which relied almost exclusively on the eyewitness identifications of two individuals, one of whom renounced her identification at trial, and nearly resulted in a deadlocked jury even without Ragland's testimony.

The California superior court judge who reviewed Howard's habeas petition concluded that Howard's attorney was not deficient in failing to pursue Ragland's testimony. Ruling without the benefit of either Ragland's declaration or an affidavit or testimony from Howard's trial counsel,[3] the superior court reasoned:

> Apropos Petitioner's contentions concerning the determination not to call Mr. Ragland as a trial witness, the pre-conviction report prepared by the Probation Department in this case notes that Mr. Ragland was a documented member of the Rolling 40's criminal street gang, was reluctant to identify the shooter and had to be contacted through a law enforcement telephone number "due to the seriousness of his gang-related crime." It is fair to consider that trial counsel was aware of this report.

> Here again, the record fails to demonstrate that there was no rational, tactical purpose in trial counsel's determination not to call a gentlem[a]n presenting serious credibility issues as a witness in this case.

Since the California Court of Appeal and Supreme Court summarily denied Howard's subsequent habeas petitions, we

---

[3]Following his appellate attorney's advice, Howard filed a "bare bones" habeas petition with the superior court to toll the running of 28 U.S.C. § 2244(d)(1)(A)'s one-year statute of limitations. Although Howard's appellate attorney had indicated that he would be able to supplement his petition, which did not include Ragland's declaration and presented his claims in a rather summary fashion, the superior court did not afford him an opportunity to do so before issuing its decision.

must consider the superior court's reasoning in conducting the deferential review required by 28 U.S.C. § 2254(d)(1). *See Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002) ("In determining whether a state court decision is contrary to federal law, we look to the state's last reasoned decision . . . as the basis for its judgment.").

**[1]** The superior court unreasonably applied the standard set forth in *Strickland*. First, its exclusive focus on the attorney's decision not to call Ragland as a witness at trial was unreasonable. In his superior court habeas petition, Howard claimed that his trial counsel "was ineffective in not *interviewing* or calling Arthur Ragland to testify." *Strickland* recognized that an attorney's duty to provide reasonably effective assistance includes the "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *see also ABA Standards for Criminal Justice: Prosecution Function and Defense Function* 4-4.1(a) (3d ed. 1993) ("Defense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case . . . ."). Thus, the superior court unreasonably applied *Strickland* by failing to explicitly consider whether Howard's attorney made a reasonable professional judgment to limit his investigation of Ragland. *See Strickland*, 466 U.S. at 690-91.

**[2]** But even if the superior court's decision is read as having made an implicit judgment that Howard's attorney reasonably decided to limit his investigation of Ragland based on the credibility concerns raised by the Probation Department's preconviction report, that implicit conclusion was itself unreasonable. In *Wiggins v. Smith*, 539 U.S. 510 (2003), the Supreme Court held that counsel's exclusive reliance on a psychological evaluation, a presentence investigation report, and social-services records was unreasonable when further investigation would have uncovered copious evidence of the defendant's bleak life history—evidence which probably

would have made a difference in the sentencing phase of the defendant's capital murder trial. The Court emphasized that an attorney's decision to forgo a particular line of defense is not necessarily reasonable simply because it is based on "*some* information" obtained in a limited investigation. *Id.* at 527. Instead, the attorney's decision "must be directly assessed for reasonableness in all the circumstances." *Id.* at 533 (quoting *Strickland*, 466 U.S. at 691). Thus, "[i]n assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Id.* at 527.

**[3]** Even without the preconviction report, one would normally expect the surviving victim to be a star witness for the prosecution. A reasonable attorney would therefore have attempted to interview Ragland to prepare for trial. *See United States v. Tucker*, 716 F.2d 576, 583-84 (9th Cir. 1983) (holding that counsel was deficient in failing to interview key government witnesses before trial); *Baumann v. United States*, 692 F.2d 565, 580 (9th Cir. 1982). The pre-conviction report provided even more reason to try to contact Ragland. The fact that Ragland was reluctant to identify his shooter would have suggested to a reasonable attorney that he might make statements in an interview that would exculpate Howard or at least raise doubts as to his guilt.

**[4]** Furthermore, Howard's attorney knew that his client wanted him to interview Ragland and call him as a witness at trial. Howard's attorney was obligated to take this request seriously. As the Supreme Court has noted:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on informa-

tion supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.

*Strickland*, 466 U.S. at 691; *see also Jones v. Wood*, 114 F.3d 1002, 1011 (9th Cir. 1997). In light of Howard's insistence that he contact Ragland, Howard's attorney could not reasonably have decided to forgo an independent investigation of this crucial witness who might have provided strong support for Howard's claim of innocence. *See Hart*, 174 F.3d at 1070 ("A lawyer who fails adequately to investigate, and to introduce into evidence, records that demonstrate his client's factual innocence, or that raise sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance."); *Gomez v. Beto*, 462 F.2d 596, 597 (5th Cir. 1972) ("When a defense counsel fails to investigate his client's only possible defense, although requested to do so by him; and fails to subpoena witnesses in support of the defense, it can hardly be said that the defendant has had the effective assistance of counsel.").

**[5]** The superior court's narrow focus on the "serious credibility issues" Ragland would have presented as a witness was unreasonable. As we have previously noted, the fact that a witness *might* not appear credible at trial is not a reasonable basis for failing "to identify or attempt to interview" him. *Avila*, 297 F.3d at 920; *see also Riley v. Payne*, 352 F.3d 1313, 1324 (9th Cir. 2003). Howard's attorney had a duty, at the very least, to apprise himself of Ragland's account of the shooting, even if he would later have decided based on the information he obtained not to put Ragland on the stand. *See Sanders v. Ratelle*, 21 F.3d 1446, 1457 (9th Cir. 1994) (quoting *United States v. Gray*, 878 F.2d 702, 712 (3d Cir. 1989)). To make an informed decision whether to call Ragland as a witness at trial, Howard's attorney was obligated to make an independent assessment of Ragland's account of the shooting and credibility as a witness. *See Lord v. Wood*, 184 F.3d 1083, 1095 (9th Cir. 1999); *Thomas v. Lockhart*, 738 F.2d 304, 308

(8th Cir. 1984) (holding that counsel rendered ineffective assistance by relying exclusively on the prosecution's investigative file even though his client provided him with information casting doubt on the prosecution's evidence).

We have ordered that habeas petitions be granted in cases quite similar to Howard's. *Brown v. Myers*, 137 F.3d 1154 (9th Cir. 1998), held that the petitioner was prejudiced by his attorney's ineffectiveness in failing to contact or elicit trial testimony from alibi witnesses. And in *Lord v. Wood*, 184 F.3d 1083, 1095 (9th Cir. 1999), we concluded that the petitioner's attorneys were deficient for failing to personally interview three witnesses who claimed to have seen a murder victim alive after the time when the prosecution claimed the petitioner killed her. Importantly, we determined that the attorneys did not fully discharge their duty to investigate even though they were equipped with reports from the police and defense investigators that indicated that there were inconsistencies in the witnesses' accounts that might undermine their credibility at trial. *Id.* at 1088-92. Despite these credibility concerns, we concluded that the attorneys' decision not to call the witnesses at trial was not a reasonably informed professional judgment entitled to deference, largely because the attorneys had not personally interviewed the witnesses and thus did not have an opportunity to "look[ ] [them] in the eye and hear[ ] [them] tell [their] story." *Id.* at 1095.

[6] We conclude that any implicit conclusion by the superior court that Howard's attorney rendered effective assistance of counsel would be an unreasonable application of clearly established federal law. The pre-conviction report was not, as the superior court seems to have believed, a reasonable basis on which to ground a decision to forgo any further investigation into a pivotal witness who Howard appears to have believed would have proclaimed his innocence.

## B.

Since the superior court's decision involved an unreasonable application of clearly established federal law, we must

make an independent evaluation of Howard's constitutional claim. *See Frantz*, 533 F.3d at 732-37. Although the respondent attempts to provide additional reasons for rejecting Howard's claim that were not articulated by the superior court, none of these reasons is sufficient to affirm the district court's denial of Howard's petition.

First, the respondent argues that Howard's attorney reasonably decided not to call Ragland as a witness because his testimony merely would have been cumulative of Fontaine's. But Howard's lawyer did not know that Fontaine would testify that Howard was not the shooter until she took the stand. Fontaine's unanticipated testimony at trial can hardly justify the attorney's failure to conduct an adequate investigation of Ragland before trial. Furthermore, we highly doubt that a reasonable attorney would have viewed Ragland's testimony as merely cumulative of Fontaine's. It is one thing for an eyewitness who has given seemingly inconsistent accounts of an event to say that the defendant was not the culprit of a crime. It is quite another for the victim himself to testify that the defendant was not the offender. A reasonable attorney would not have decided to forgo testimony from Ragland that Howard was not the shooter based simply on the force of Fontaine's testimony.

The respondent also contends that Howard's attorney's failure to call Ragland as a witness was consistent with the attorney's strategic decision to largely refrain from presenting a defense and instead focus on calling into question the prosecution's ability to prove its case beyond a reasonable doubt. The respondent notes that in a so-called "*Marsden* hearing" on Howard's motion to dismiss his trial attorney and have a new lawyer appointed, *see People v. Marsden*, 2 Cal. 3d 118 (1970), Howard stated that his attorney was refusing to call "several witnesses" who were "questioned by the detective and said they couldn't I.D. [him]." Howard now claims that one of these witnesses was Ragland. Howard's attorney indicated that he was "somewhat" familiar with these witnesses

and would not call them to testify because he usually did not elicit testimony from witnesses who merely could not positively identify the defendant as the person who committed the crime. Thus, the respondent argues, Howard's attorney had a legitimate tactical reason for not calling Ragland to the stand: Ragland would simply have testified that he could not identify Howard as the shooter, which would have done little to bolster the defense's case. Since Ragland's testimony would not have significantly helped the defense, the respondent contends, the attorney's decision not to call Ragland as a witness was reasonable.

This argument fails in light of both Howard's allegation that his attorney did not carry out an independent investigation of Ragland and Ragland's declaration that, if "made to testify . . . [he] would" affirm that Howard was not the shooter. Perhaps if the evidentiary record in this case is further developed, it will become clear that Howard's attorney actually conducted an adequate investigation of Ragland or that Ragland would not have been willing to testify at the time of Howard's trial that Howard was not the shooter. But as the record now stands, Howard has made a preliminary showing that (1) Ragland would have declared his innocence if made to testify at trial, and (2) his attorney never interviewed Ragland at all. Under the circumstances—again, a less than fully developed record—the attorney's decision not to call Ragland as a witness could not have been a reasonably informed professional judgment.[4]

---

[4]The respondent also contends that Howard's attorney may have made a strategic decision not to elicit testimony from Ragland and instead to ask the jurors in his opening and closing statements to draw adverse inferences from the prosecution's failure to call Ragland as a witness. To be sure, that might have been an entirely appropriate strategic choice *if* the attorney had interviewed Ragland and concluded that he would not be a credible witness. But again, Howard's attorney could not reasonably make this tactical decision without first conducting an adequate investigation of Ragland. *See Strickland*, 466 U.S. at 690-91.

**[7]** Finally, the respondent argues that Howard was not prejudiced by his attorney's failure to interview or elicit trial testimony from Ragland because Ragland would not have been a credible witness and the government's evidence against Howard was overwhelming. However, the record belies the claim that the prosecution's case was strong. The government had no physical evidence linking Howard to the crime. It relied almost exclusively on the eyewitness identifications of Fontaine and Hernandez. At trial, Fontaine denied ever identifying Howard as the shooter and explicitly stated on cross-examination that he was not the man she had seen on the night of the shooting. Although Hernandez positively identified Howard as the shooter, if Ragland had testified otherwise, thereby buttressing Fontaine's trial testimony, some jurors might well have had a reasonable doubt as to Howard's guilt. Indeed, the jurors' declaration on the second day of their deliberations that they were deadlocked suggests that—even without Ragland—this was a close case. Whatever the challenges to Ragland's credibility, his testimony might well have tipped the balance in Howard's favor. At the very minimum, if Ragland was ready and willing to testify as to Howard's innocence, and Howard was deprived of such testimony because of his attorney's shoddy investigation, our confidence in the jury's verdict would be significantly undermined. *See Strickland*, 466 U.S. at 694.

**[8]** For these reasons, we hold that the district court erred in denying Howard's request for an evidentiary hearing.**⁵** We

---

**⁵**On remand, the respondent may argue that Howard is not entitled to expand the evidentiary record because he failed to avail himself of the opportunity to develop the factual basis of his claim in the state habeas proceedings. *See* 28 U.S.C. § 2254(e)(2); *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005) ("[T]he conditions of § 2254(e)(2) generally apply to Petitioners seeking relief based on new evidence, even when they do not seek an evidentiary hearing."). We do not decide this issue since the parties have not briefed it. However, we note that we have previously ruled that "[w]here . . . the state courts simply fail to conduct an evidentiary hearing, [section 2254(e)(2)] does not preclude a federal evidentiary hearing on otherwise exhausted habeas claims." *Jones*, 114 F.3d at 1013.

thus remand the case for further proceedings by the district court to test the merits of his allegations.

### III. Howard's Attorney's Failure To Call an Eyewitness-Identification Expert

**[9]** Although we reverse the district court's denial of Howard's claim based on his attorney's failure to interview or elicit trial testimony from Ragland, we affirm its denial of his claim that his attorney rendered ineffective assistance by failing to call as a defense witness an expert on the unreliability of eyewitness testimony. Without reaching the issue of whether Howard's attorney's failure to call such an expert fell below prevailing standards of professional competence, we hold that Howard's Sixth Amendment right to effective assistance of counsel was not violated because he suffered no prejudice. We have repeatedly affirmed district court decisions to exclude the testimony of eyewitness-identification experts from federal criminal trials. In reaching these decisions, we have made it clear that we "adhere to the position that skillful cross examination of eyewitnesses, coupled with appeals to the experience and common sense of jurors, will sufficiently alert jurors to specific conditions that render a particular eyewitness identification unreliable." *United States v. Christophe*, 833 F.2d 1296, 1300 (9th Cir. 1987); *see also United States v. Labansat*, 94 F.3d 527, 530 (9th Cir. 1996); *United States v. Langford*, 802 F.2d 1176, 1179-80 (9th Cir. 1986); *United States v. Brewer*, 783 F.2d 841, 842-43 (9th Cir. 1986); *United States v. Amaral*, 488 F.2d 1148, 1152-54 (9th Cir. 1973). If federal defendants are not prejudiced by the exclusion of testimony from eyewitness-identification experts, Howard was not prejudiced by his trial attorney's failure to call such an expert, especially on this record.[6] His attorney

---

[6]To the extent that the California state courts relied on similar reasoning, their decision that Howard was not prejudiced by his counsel's failure to call an eyewitness-identification expert is entitled to deference under 28 U.S.C. § 2254(d)(1). *See Howard*, 2004 WL 2664018, at *6 (citing *United States v. Brewer*, 783 F.2d 841, 842-43 (9th Cir. 1986), which we also cite in our discussion above).

extensively cross-examined Hernandez and Fontaine and, even more significantly, the jurors were instructed on the potential shortcomings of eyewitness testimony. *Cf. Jones v. Smith*, 772 F.2d 668, 674 (11th Cir. 1985) (holding that state prisoner was not entitled to habeas relief based on his counsel's failure to call an expert witness on the unreliability of eyewitness testimony).

## *CONCLUSION*

**[10]** For the foregoing reasons, we conclude that the district court correctly denied Howard's claim that his right to effective assistance of counsel was violated by his trial attorney's failure to call an expert witness on the unreliability of eyewitness testimony. However, we hold that the district court erred in denying Howard's request for an evidentiary hearing on his attorney's failure to interview or elicit trial testimony from Ragland. Assuming that 28 U.S.C. § 2254(e)(2) presents no barrier, *see supra* note 5, Howard should be afforded an opportunity to offer additional evidence to support this claim.

Accordingly, we **AFFIRM IN PART** and **REVERSE IN PART** the district court's denial of a writ of habeas corpus and **REMAND** for further proceedings consistent with this opinion.