**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CLARENCE LASALLE ROSE, | No. 07-55667 |
| Petitioner - Appellant, | D.C. No. CV-04-03344-PA |
| v. | |
| MICHAEL S. EVANS, | MEMORANDUM [*] |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued August 3, 2009
Resubmitted February 14, 2011
Pasadena, California

Before: CANBY, WARDLAW and CALLAHAN, Circuit Judges.

Clarence Rose was convicted in California state court of first degree murder

and related charges, and his conviction was affirmed on appeal. Rose thereafter

launched a collateral attack on his conviction in the state courts, which ultimately

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

resulted in an evidentiary hearing in Superior Court on his claims of ineffective assistance of counsel. *See Rose v. Superior Court*, 96 Cal. Rptr. 2d 843 (Cal. Ct. App. 2000). In ordering the evidentiary hearing, the Court of Appeal noted that Rose's lead private counsel was a recent California Bar admittee who had tried only one jury case. He was assisted by another attorney who had three years of experience. Neither attorney had ever defended a felony case. *Id.* at 846. After the ensuing evidentiary hearing, the Superior Court entered findings and conclusions that may be paraphrased as follows:

(1) There was no tactical reason for defense counsel not to conduct an investigation of the prosecution witnesses for possible bias, intoxication or confusion. Counsel did not recall whether he knew that he could have had an investigator appointed by the court. He did consult with previously assigned investigators and reviewed reports of witness interviews by those investigators. During the trial, defense counsel adduced on cross-examination the facts that the witnesses had consumed substantial amounts of alcohol prior to the shooting, that the incident occurred at night, and that the witnesses were frightened by the assault. During closing argument, counsel argued that the witnesses' alcohol consumption could have affected their ability to make an accurate identification. Both defense counsel also impeached the witnesses with prior inconsistent statements.

Rose introduced no evidence of bias on the part of the witnesses. A prior investigator testified that he attempted to interview identification witnesses but they refused to be interviewed.

The failure to conduct a pretrial investigation of the witnesses did not deprive Rose of his right to present a meritorious defense.

(2) Defense counsel had no strategic reason not to call Rose's physician to testify to Rose's physical condition arising from a prior,

2

unrelated shooting that allegedly caused Rose to limp. At the evidentiary hearing, Rose made no offer of proof as to what testimony the physician would have given.

In the absence of an offer of proof, the failure to call the physician could not be shown to have deprived Rose of a meritorious offense.

(3) Defense counsel did attempt to investigate allegations of police bias against Rose. He caused an *in camera* investigation of one officer's personnel file, which failed to reveal any indication of bias. He attempted to subpoena another officer but the police department refused the subpoena because the officer had retired. Counsel did not pursue the matter further.

Rose made no offer of proof as to what testimony the latter officer would have provided.
At trial, counsel elicited from Rose's father testimony suggesting bias by police against Rose.

The failure to investigate further did not deprive Rose of a meritorious defense.

(4) Defense counsel believed that it would have been helpful to have an eyewitness expert to testify. Lead counsel was unaware that an expert could have been appointed at no cost to Rose; secondary counsel was aware that an expert could have been appointed. An expert testified at the evidentiary hearing that poor lighting, stress, presence of a weapon, the absence of distinguishing physical characteristics, the presence of multiple people at the scene, and the fact that the identification is cross-racial all decrease the accuracy of an eyewitness identification.

At trial, prosecution witnesses were cross-examined about stress, alcohol consumption, lighting conditions, distances and "other factors" affecting eyewitness identification. It was also apparent that the identification was cross-racial. The jury was instructed on factors to consider in weighing eyewitness identifications, per California Jury Instruction [CALJIC] 2.92.

Rose was not deprived of a meritorious defense because of counsel's failure to call an eyewitness identification expert.

3

(5) Defense counsel considered challenging the photo lineup that was shown to the prosecution eyewitnesses, but did not do so. Lead counsel thought that there was something distinctive about Rose's photo in the lineup, but could not remember what it was. Secondary counsel speculated that there might have been something suggestive in the manner in which the photos were shown to the witnesses, but no evidence was produced to that effect. The photo display did not appear to be suggestive.

Rose was not denied a meritorious defense by the failure of defense counsel to challenge the photo lineup, or by the failure to insist on a live lineup.

The court concluded by pointing out that defense counsel had presented several witnesses that testified that Rose was not outside where the shooting occurred at the time in issue. The witnesses testified to facts tending to indicate that another gang member, "Al Dog," was the shooter. The court stated that the impeachment of these defense witnesses did not demonstrate ineffective assistance. Finally, the court stated that defense counsel's failure to object to prosecution argument referring to gang membership was not prejudicial because the gang membership was in evidence and the argument was not improper. In summary, the court held that Rose had failed to demonstrate prejudice as a consequence of counsel's alleged deficiencies. It accordingly denied the petition for a writ of habeas corpus.

4

The Court of Appeal affirmed the court's order without opinion, with one justice noting dissent. The California Supreme Court subsequently denied Rose's petition for a writ of habeas corpus without opinion.

Rose then filed this petition for habeas corpus in the federal district court. The district court denied the petition, holding that Rose had not shown prejudice with regard to any of his claims of ineffective assistance of counsel. We granted a certificate of appealability.[1] We affirm the judgment of the district court.

There is no question that Rose's lead counsel was woefully inexperienced for conducting the defense of a charge as serious as murder. But Rose comes to federal court seeking a writ of habeas corpus to release him from state custody, and we cannot grant such a writ unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The applicable constitutional standard for establishing ineffective assistance of counsel in

---

[1] Our certificate permitted Rose to pursue 12 claims of ineffective assistance of counsel, arising from counsel's failure: (1) to conduct a pretrial investigation of prosecution witnesses; (2) to make an informed decision as to whether to have Rose's physician testify to his physical condition; (3) to investigate alleged bias of a police investigating officer; (4) to present expert testimony on eyewitness identification; (5) to challenge the photographic lineup; (6) to request appointment of an investigator; (7) to discover and present additional exculpatory witnesses; (8) to introduce evidence of police bias after his opening statement said he would; (9) to understand the basic rules of evidence; (10) to understand the process of calling witnesses; (11) to object to parts of the prosecutor's closing argument; and (12) to object to the imposition of an unlawful sentence.

5

violation of the Sixth Amendment is provided by *Strickland v. Washington*, 466 U.S. 668 (1984). To show that counsel's defective performance requires reversal of a conviction, a defendant must satisfy two requirements:

> First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. It is primarily because of failure to meet the second requirement – prejudice – that the state court denied collateral relief.

In addressing this state court ruling, we are constrained by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). AEDPA precludes us from granting habeas corpus relief as to any claim that was adjudicated on the merits by the state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Thus, even if we were to determine in our own analysis that Rose had shown sufficient prejudice to meet the second *Strickland* standard, we could not grant the writ of habeas corpus unless it was *unreasonable* for the state court to come to a different conclusion. "It bears repeating that even a strong case for relief does not

6

mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

We conclude that it was not unreasonable for the state court to conclude that Rose was not prejudiced by counsel's alleged errors. Rose's claims of prejudice were noticeably unsupported by evidence. For example, he contends that his counsel failed to investigate prosecution witnesses, and failed to search for additional witnesses. Yet in the collateral proceedings there was no showing as to what evidence might have been discovered in a thorough investigation, or what testimony the undiscovered witnesses might have given. The same is true of the failure to call Rose's physician, or to investigate more thoroughly claims of bias by police officers. There is no evidence in the record of what any missing testimony would have shown. Rose also claims that his counsel was insufficiently aware of the basic rules of evidence, such as hearsay, and other rules of trial procedure. Yet there is no showing of what harmful, inadmissible hearsay was admitted, or what materially favorable admissible evidence was excluded. In addition, Rose claims that his counsel was ineffective in failing to object to an impermissible portion of the sentence, but that error was corrected on appeal and cannot possibly have prejudiced Rose.

There are two claims of deficient performance on which Rose provided evidence to the state court. First, at the evidentiary hearing, he presented an expert on eyewitness testimony who would have been able to testify that the accuracy of eyewitness testimony is decreased by poor lighting, stress, presence of a weapon, the absence of distinguishing physical characteristics, the presence of multiple people at the scene, and the fact that the identification is cross-racial. This evidence might have been helpful, but we are not convinced that it was unreasonable for the state court to conclude that there was no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The jury was instructed in accordance with CALJIC No. 2.92, as follows:

In determining the weight to be given eye witness identification testimony, you should consider the believability of the eye witness as well as other factors which bear upon the accuracy of the witness' identification of the defendant, including, but not limited to, any of the following:
    The opportunity of the witness to observe the alleged criminal act and the perpetrator of the act;
    The stress, if any, to which the witness was subjected at the time of the observation;
    The witness' ability, following the observation, to provide a description of the perpetrator of the act;
    The extent to which the defendant either fits or does not fit the description of the perpetrator previously given by the witness;
    The cross-racial or ethnic nature of the identification;
    The witness' capacity to make an identification;

8

Evidence relating to the witness' ability to identify other alleged perpetrators of the criminal act;

Whether the witness was able to identify the alleged perpetrator in a photographic or physical lineup;

The period of time between the alleged criminal act and the witness' identification;

Whether the witness had prior contacts with the alleged perpetrator;

The extent to which the witness is either certain or uncertain of the identification;

Any other evidence relating to the witness' ability to make an identification.

Defense counsel cross-examined the eyewitnesses concerning several of these factors and argued some of these factors (although not cross-racial identification) in his final argument.

Rose contends that the above instruction is no substitute for expert testimony on eyewitness identification because the instruction does not indicate which way each factor cuts. It was not unreasonable, however, for the state court not to require such explanation when the operation of the factors is relatively self-evident.

Finally, we previously have held that, because our precedent establishes that expert testimony on the unreliability of eyewitness testimony may be excluded without prejudice to defendants, it was also not prejudicial for defense counsel to fail to call such a witness. *Howard v. Clark*, 608 F.3d 563, 574 (9th Cir. 2010). In light of *Howard* and all the circumstances of this case, we conclude that it was not

9

unreasonable for the state court to rule that Rose was not prejudiced by the failure of his counsel to call an expert to testify regarding eyewitness identification.

The second item of substance that Rose introduced in the collateral hearing was the photographic lineup. The Superior Court stated that the photographic display did not appear to be suggestive. We have reviewed the photographic display and agree with that conclusion. The failure to challenge the display consequently did not prejudice Rose, or at least it was not unreasonable for the state court to draw this conclusion. The assertion of Rose's secondary counsel that the display may have been presented to the eyewitnesses in a suggestive manner was unsupported by any evidence, and it was not unreasonable for the state court to reject that speculation.

Rose contends that his counsel "promised" in his opening statement to introduce evidence of police bias and then did not produce it. The record does not substantiate a promise, but in any event some evidence of bias was introduced through the testimony of Rose's father. It was not unreasonable for the state court to deny claims of prejudice from this alleged error of counsel.

At Rose's request, we ordered supplemental briefing regarding Rose's claim that the last reasoned decision of the state courts was the Superior Court decision, which Rose contends failed properly to apply the *Strickland* prejudice standard.

10

Rose therefore argues that no deference is due the state court rulings under AEDPA.

We are not convinced that the Superior Court's finding of no deprivation of a meritorious defense was inconsistent with *Strickland*'s prejudice standard, *see In re Harris*, 21 Cal. Rptr. 2d 373, 400-01 (1993), but the issue of deference has been foreclosed by the Supreme Court's recent decision in *Richter*. The Superior Court's decision here was followed by unexplained denials of habeas corpus by the state Court of Appeal and the California Supreme Court. *Richter* squarely held that an unexplained denial of a writ of habeas corpus by the California Supreme Court is an adjudication on the merits that is entitled to deference under § 2254(d) unless "there is reason to think some other explanation for the state court's decision is more likely." *Richter*, 131 S. Ct. at 785. No other explanation has been offered here. It is not necessary for the state court to cite or even be aware of the applicable cases of the United States Supreme Court; § 2254(d) still applies. *Id.* at 784.

> Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.

11

*Id.* Because we have held that failure to show prejudice within the meaning of *Strickland* was sufficient reason for the California Supreme Court to deny relief, Rose's argument fails.

We have reviewed Rose's remaining arguments and find them to be without merit. The judgment of the district court denying Rose's petition for a writ of habeas corpus is

**AFFIRMED.**