NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 21 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ROGELIO CUEVAS ESPINOZA,<br><br>               Petitioner - Appellant,<br><br>v.<br><br>MARION SPEARMAN,<br><br>               Respondent - Appellee. | No. 13-57167<br><br>D.C. No. 3:10-cv-00397-WQH-BGS<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted May 2, 2016
Pasadena, California

Before: PREGERSON, BYBEE, and N.R. SMITH, Circuit Judges.

Rogelio Espinoza appeals the district court's denial of his writ of habeas

corpus and denial of his request for an evidentiary hearing.

On March 10, 2001, Espinoza attended a relative's party at a convention hall

in celebration of a baptism. At the party, a fight erupted between Espinoza and

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

two brothers, Arturo Rivera (Arturo) and Adan Rivera (Adan). Espinoza was wounded during the fight, and then retreated. Espinoza's uncle handed him a semi-automatic handgun and showed him how to use it.

Shortly thereafter, a second confrontation occurred outside the party. Espinoza fired the gun several times at the ground, in the air, and in Arturo's general direction to keep Arturo and Adan at bay. A crowd quickly gathered, and a struggle ensued to wrest the gun away from Espinoza. Espinoza fired the gun during this struggle several times in various directions, by his account, "because people were 'yanking' at his hand." Arturo was shot in the right eye, which he consequently lost. Forensic evidence suggested that Arturo was shot from a distance of more than three or four feet. Eight cartridge casings and a bullet fragment were recovered. Forensics showed the bullets had all been fired from the same gun, while the shooter was moving.

Espinoza was charged with attempted murder, mayhem, and assault with a semi-automatic weapon. Espinoza was the only defense witness at his trial, testifying that the shooting was accidental, that he did not intend to actually shoot Arturo. The jury deliberated for three days and requested the taped interviews during deliberations. Ultimately, the jury deadlocked on the attempted murder charge, but convicted Espinoza on the assault and mayhem charges. He was

sentenced to four years for mayhem and a consecutive term of 25 years to life in prison for the assault conviction.

Before trial, percipient witnesses Sylvia Escamilla and Miguel Rubio contacted Espinoza's counsel. According to Escamilla's later affidavit, Espinoza indeed "shot one or two shots into the ground" to warn off Arturo and Adan before a struggle ensued, and "more shots were [then] fired in the air." "[S]omeone in the crowd" was trying to get the gun and at that point "shots began to go in all directions." Someone yelled that the police were coming, and Escamilla then saw "someone else grab the gun." She believed this person then shot Arturo, and was willing to testify as much. She felt confident she could identify the person. Escamilla told Espinoza's defense investigator her account, left messages at the law firm, but was "never contacted" about the matter any further.

Rubio similarly saw several people surround Espinoza and "saw a gun being shot in the air." "[E]veryone was trying to take control of [the gun]" and during the struggle, "a lot of gun shots were fired towards all directions." Someone yelled that the police were coming, and everyone began to scramble. At that point, Rubio claimed that a "short male in the group" fired two shots "towards Arturo." Rubio similarly told the defense investigator his story, "was told [he] would need to tell this to the courts," but "never received a call or a time to appear."

3

In the California Supreme Court, Espinoza filed a pro se habeas petition alleging multiple claims for relief, along with a request for an evidentiary hearing. He submitted sworn declarations from the potential defense witnesses in support of his claim in the California Supreme Court. He also filed a Motion for Discovery and Interrogatories. The stated purpose of the interrogatories was "to understand Defense Trial Counsel's reasons for his actions and omissions."

The California Supreme Court summarily denied Espinoza's petition and request for an evidentiary hearing. It did not rule on the discovery motion.

Espinoza then filed a habeas petition in federal court. The district court denied Espinoza's claims, but certified for appeal Espinoza's *Strickland* claim regarding his counsel's failure to interview Escamilla and Rubio. Espinoza's failure to interview claim is the only claim before this court on appeal.

We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. We reverse the district court's denial of Espinoza's habeas petition and remand to the district court for an evidentiary hearing on counsel's failure to interview the two witnesses.

First, we find that the state court decision constituted an unreasonable application of Supreme Court law under 28 U.S.C. § 2254(d)(1); second, we find that 28 U.S.C. § 2254(e)(2)—limitations on expanding the federal court record—does not apply to Espinoza's claim; third, we find that an evidentiary

4

hearing is necessary under *Townsend v. Sain*, 372 U.S. 293, 313 (1963), *overruled on other grounds in Keeney v. Tamayo-Reyes*, 504 U.S. 1, 5 (1992). We note that neither *Cullen v. Pinholster* nor *Schriro v. Landrigan* applies to Espinoza's case.

1.      We review a district court's denial of a habeas petition de novo. *Howard v. Clark*, 608 F.3d 563, 567 (9th Cir. 2010). Because Espinoza's petition was filed after 1996, our review is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). Under AEDPA, we will reverse a state court's decision if it "was contrary to, or involved an unreasonable application of, clearly established [Supreme Court] law." 28 U.S.C. § 2254(d)(1).

When a state court has not provided reasoning to support its decision, we conduct an independent review of the record to determine whether its ultimate decision was an unreasonable application of clearly established federal law. *Greene v. Lambert*, 288 F.3d 1081, 1088–89 (9th Cir. 2002). In an independent review, "our duty under AEDPA is not absolved." *Murray v. Schriro*, 745 F.3d 984, 96 (9th Cir. 2014). The petitioner still bears the burden of "showing there was no reasonable basis for the state court to deny relief," making our ultimate inquiry "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with" Supreme Court law. *Harrington v. Richter*, 562 U.S. 86, 98, 102 (2011).

5

There is no evidence in the state court record to explain trial counsel's behavior. We can only assume, therefore, that the California Supreme Court decided Espinoza's case on prejudice grounds. Accordingly, we must decide whether under the doubly-deferential standards of AEDPA and *Strickland*, trial counsel's decision not to call Escamilla and Rubio to testify at trial prejudiced Espinoza. We conclude that it did.

As *Strickland* maintains, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693. Rather, a defendant must show a reasonable probability that, absent counsel's error, the fact-finder would have had a reasonable doubt as to his guilt. *Id.* at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Determining prejudice in the context of a failure to investigate obviously requires considering "the strength of the government's case." *Rios v. Rocha*, 299 F.3d 796, 808–809 (9th Cir. 2002) (quoting *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986)).

Here, the government's case was simply not very strong. Everyone agreed that Espinoza shot the gun, several times, and at times in Arturo's direction. But, as noted by the California Court of Appeal in Espinoza's direct appeal, "[t]he trial occurred about five years after the shooting and by that time many of the witnesses

could not remember all the details of the events or testified to versions that differed from their taped interviews with the police." Ramon Rodriguez[1] testified that Espinoza shot the gun *at* Arturo, but did not see him actually shoot Arturo. Rosey Barajas[2] could not remember the circumstances of the shooting, and could not recall what she had told police at the time. Adan, the brother of the victim, who took part in the fight, testified that he had not seen Espinoza holding a gun, firing into the air, or pointing the gun at Arturo. And Norma Soltero's[3] testimony shows that she saw Espinoza shooting in the air and at the ground, but that, once the shooting started, she was concerned for her children's safety and did not see the shot that hit her brother Arturo in the eye. So while some witnesses saw Espinoza shoot a gun, none actually saw Espinoza shoot Arturo.

Consistent with the above testimony, Escamilla and Rubio would have testified that Espinoza fired several shots in Arturo's direction before a struggle ensued. During this struggle, numerous people tried to get control of the gun and several more shots were fired in all directions. Escamilla and Rubio both would have testified that someone got the gun away from Espinoza and fired it at Arturo.

---

[1] Ramon Rodriguez was a partygoer, who testified for the prosecution.

[2] Rosey Barajas is the sister of Espinoza's ex-wife.

[3] Norma Soltero is Arturo's sister, who testified for the prosecution.

The jury deliberated for three days in this case. It reviewed the taped witness interviews during deliberations. And then it deadlocked on the attempted murder charge while agreeing on the mayhem and assault charges. *See, e.g.*, *Jennings v. Woodford*, 290 F.3d 1006, 1019 (9th Cir. 2002) ("Because the jury spent as long as it did deliberating, [two days,] it is reasonably probable that, [absent counsel's errors], it would have found a reasonable doubt as to [the defendant's guilt]."). We are convinced that Escamilla and Rubio's testimony creates "a reasonable probability" that "the fact-finder would have had a reasonable doubt as to [Espinoza's] guilt," *Strickland*, 466 U.S. at 695; *see also Luna v. Cambra*, 306 F.3d 954, 961–62 (9th Cir. 2002) (holding that defendant was prejudiced, under AEDPA, when counsel failed to interview alibi witnesses where reasons existed to doubt the accuracy of the witnesses' testimony).

2.      Because there is no record about trial counsel's failure to investigate Escamilla and Rubio, there is an issue as to whether an evidentiary hearing on the matter is appropriate. We review a district court's denial of a request for an evidentiary hearing for abuse of discretion. *Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir. 2005). Section 2254(e)(2) limits the circumstances under which a habeas petitioner may expand the record in federal court. Section 2254(e)(2) limitations apply only when a petitioner has "failed to develop the factual basis of a claim in

8

State court proceedings." 28 U.S.C. § 2254(e)(2); *see also Williams v. Taylor*, 529 U.S. 420, 433 (2000). "[F]ailure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams*, 529 U.S. at 432.

Espinoza did not fail to develop the factual basis of his claim in state court. He requested an evidentiary hearing, which the California Supreme Court denied. That request alone would have been sufficient to overcome § 2254(e)(2)'s threshold requirement. *See Hurles v. Ryan*, 752 F.3d 768, 791 (9th Cir. 2014) ("A petitioner who has previously sought and been denied an evidentiary hearing has not failed to develop the factual basis of his claim.").

In addition, Espinoza provided sworn declarations from potential defense witnesses to substantiate the factual basis of his claim in California Supreme Court. He attempted to develop the facts by filing a Motion for Discovery and Interrogatories, which the California Supreme Court never ruled on. Despite Espinoza's efforts in state court, he was unable to develop the factual basis of his claim. There was no lack of diligence nor any fault attributable to Espinoza. Section 2254(e)(2) limitations thus do not apply to Espinoza's request for an evidentiary hearing.

3.      We find that an evidentiary hearing is necessary under *Townsend*, 372

9

U.S. at 313, *overruled on other grounds in Keeney*, 504 U.S. at 5. We conclude that Espinoza is entitled to an evidentiary hearing because "his allegations, if proved, would entitle him to relief." *Hurles*, 752 F.3d at 791–92.

4.      Finally, we note that neither *Cullen v. Pinholster*, 563 U.S. 170 (2011), nor *Schriro v. Landrigan*, 550 U.S. 465 (2007), applies to Espinoza's request for an evidentiary hearing. As we have stated, "*Pinholster* precludes the consideration of new evidence only for the purpose of determining whether the last reasoned state court decision was contrary to or an unreasonable application of clearly established law or an unreasonable determination of the facts under 28 U.S.C. § 2254(d)." *Crittenden v. Chappell*, 804 F.3d 998, 1010 (9th Cir. 2015). *Pinholster* thus prevents a habeas petitioner from expanding the evidentiary record in federal court to strengthen his claim that the state court unreasonably applied the law under § 2254(d)(1) or made an unreasonable determination of facts under § 2254(d)(2). That is not the situation here. In finding that the state court's denial of Espinoza's habeas petition constituted an unreasonable application of *Strickland*, we considered the *same* record that was before the state court. *Pinholster* does not apply after a federal court has made a § 2254(d) determination.

*Schriro* likewise does not affect Espinoza's request. *Schriro* stands for the proposition that, if the state court record is sufficient to support a determination

10

under § 2254(d), then a district court is not required to hold an evidentiary hearing. *Schriro*, 550 U.S. at 477; *see also Pinholster*, 563 U.S. at 183 (discussing *Schriro*). Unlike in *Schriro*, where the state court record was adequate to support the state court's decision, Espinoza's state court record was insufficient to support the denial of his *Strickland* claim.

For the foregoing reasons, we REVERSE and REMAND for an evidentiary hearing before the district court on Espinoza's *Strickland* claim to consider whether trial counsel was deficient as well as Escamilla and Rubio's credibility.

*Espinoza v. Spearman*, No. 13-57167

N. R. Smith, Circuit Judge, dissenting:

The Supreme Court unanimously reversed this court "for failing to accord required deference to the decision of a state court" in *Harrington v. Richter*, 562 U.S. 86, 92 (2011). Again, the majority here fails to accord the proper deference to the state court's decision and seems to plead for the Supreme Court to once again unanimously reverse us. Therefore, I must dissent.

When a prisoner asks us to set aside a state court sentence due to ineffective assistance of counsel, we must give the state court's decision double deference. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). At the first level of deference, we must give deference to the trial counsel's "wide latitude . . . in making tactical decisions." *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (citing *United States v. Decoster*, 624 F.2d 196, 208 (D.C. Cir. 1976)). In order to establish ineffective assistance of counsel under *Strickland*, Espinoza has the burden to prove "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. First, to establish deficient performance, Espinoza must show his "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. We "must indulge a strong presumption that counsel's conduct [fell] within the wide range of

-1-

reasonable professional assistance; that is, [Espinoza] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  Second, to establish that the deficient performance prejudiced the defense, Espinoza has to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

At the second level of deference, we must give deference to the state court under AEDPA. Under this level of deference, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. Thus, AEDPA demands that "a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of" the Supreme Court. *Id.* at 102. In fact, "[a] state court's determination that a claim lacks merit *precludes federal habeas* relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

*Id.* at 101 (emphasis added) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The majority bypasses the first step of the *Strickland* analysis regarding counsel's alleged deficient performance, because it claims there is "no evidence in the state court record to explain trial counsel's behavior." Wrong. The record contains sufficient evidence to establish counsel's effective performance regarding witnesses, Escamilla and Rubio. The record establishes counsel spoke with Escamilla and Rubio, and thus arguably had the opportunity to know what each would testify. Thus, counsel knew this testimony would contradict Espinoza's testimony. This explains trial counsel's decision not to call these witnesses at trial and aligns with our duty under *Strickland* to "indulge a strong presumption that counsel's conduct . . . might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. It was Espinoza's burden to present evidence to overcome the presumption that counsel's decision was sound trial strategy, and he failed to do so. Therefore, we must give deference to counsel under *Strickland*. And, under the second level of deference, this trial strategy "could have supported the state court's decision" to deny relief. *Harrington*, 562 U.S. at 102. Fairminded jurists could disagree on the correctness of the state court decision. In fact, the district court

agreed with the state court's determination. Therefore, under AEDPA, we are precluded from granting federal habeas relief.

The majority proceeds directly to the second step of the *Strickland* analysis and finds prejudice resulted from counsel's actions. Wrong again. Even if the performance were deficient, Espinoza fails to meet his burden to demonstrate that counsel's representation resulted in prejudice. The government had a strong case with overwhelming evidence that Espinoza maintained possession of the only gun at the scene and shot Arturo. For example, Ramon Rubio Rodriguez testified he witnessed Espinoza pointing a gun towards Arturo and shooting; Norma Alicia Soltero testified she witnessed Espinoza shooting a gun into the air and at Arturo's feet; Evaelena Gallegos told the police she witnessed Espinoza holding a gun and walking towards Arturo; and Olivia Addison testified that Espinoza was the only individual she witnessed with a gun. All of this testimony was bolstered by Espinoza's own admission that he possessed the only gun at the scene and that he maintained possession of this gun. Furthermore, Espinoza fled to Mexico and evaded arrest for roughly five years after the shooting. *See id.* at 113 (finding the state court was not unreasonable to conclude the defendant's evidence of prejudice fell short of the *Strickland* standard in part because "[t]here was . . . sufficient conventional circumstantial evidence pointing to [the defendant's] guilt"). Thus, in

-4-

light of the circumstantial evidence and strength of the government's case, even if counsel had called these witnesses at trial, there was not a "reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under the second level of deference to the state court, the circumstantial evidence and strength of the government's case could have supported the state court's decision. Fairminded jurists could disagree on the correctness of the state court decision. Therefore, under AEDPA, we are precluded from granting federal habeas relief.

We review for abuse of discretion the district court's denial of an evidentiary hearing based on AEDPA standards. *Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir. 2005). An evidentiary hearing "is required if: '(1) [the defendant] has alleged facts that, if proven, would entitle him to habeas relief, and (2) he did not receive a full and fair opportunity to develop those facts.'" *Id.* at 1167 (alteration in original) (quoting *Williams v. Woodford*, 384 F.3d 567, 586 (9th Cir. 2004)). Here, Espinoza failed to allege facts that, if proven, would entitle him to habeas relief. Therefore, the district court did not abuse its discretion in denying him an evidentiary hearing. *See Earp*, 431 F.3d at 1166–67.