Filed 1/8/15  P. v. Dominguez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>FRANCISCO SERNA DOMINGUEZ,<br><br>  Defendant and Appellant. | G048840<br><br>(Super. Ct. No. 11NF0900)<br><br>O P I N I O N |
| In re FRANCISCO SERNA DOMINGUEZ<br><br>  on Habeas Corpus. | G049746 |


Appeal from a judgment of the Superior Court of Orange County, Carla M. Singer, Judge.  Appeal dismissed.

Original proceedings; petition for a writ of habeas corpus, after judgment of the Superior Court of Orange County.  Order to show cause issued.

Kevin D. Sheehy, under appointment by the Court of Appeal, for Defendant, Petitioner, and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Sabrina Y. Lane-Erwin, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted Francisco Serna Dominguez of oral copulation or sexual penetration of a child 10 years of age or younger (Pen. Code, § 288.7, subd. (b); count 1; all further statutory references are to this code), and lewd act with a child younger than 14 (§ 288, subd. (a); count 2).  The court imposed a term of 15 years to life on count 1, and a consecutive term of two years on count 2, stayed pursuant to section 654.

This consolidated petition for writ of habeas corpus and appeal presents one issue.  Dominguez argues he received ineffective assistance of trial counsel regarding a pre-preliminary hearing settlement offer of six years.  The Attorney General concedes Dominguez's petition states a prima facie case for writ relief.  We agree and issue an order to show cause returnable to the superior court, and dismiss the appeal as moot.

**FACTS**

In early March 2011, R.S. entrusted the care of her then-six-year-old daughter, D.C., to her neighbor, G.T., during working hours.  Dominguez lived with G.T.  One day, D.C. complained to her mother that "her private part was hurting" after she and her mother got home from G.T.'s house.  R.S. asked D.C. what happened, and D.C. said Dominguez touched her private part "and it hurts."  D.C. also said Dominguez called her into the garage, away from G.T., pulled her pants and underwear down, touched her private part, and they watched a pornographic movie together.  The next day, D.C. repeated her story and described the movie Dominguez showed her.  R.S. and D.C. soon moved from their residence, but R.S. did not notify the police immediately.

R.S. did contact the police around March 22 and a police investigator conducted a recorded interview of D.C.  During this interview, D.C. said Dominguez touched the inside of her private part.  Using a doll, D.C. showed the investigator how

2

Dominguez's hand went back and forth and onto and inside the labia of her vagina. However, D.C. denied Dominguez showed her any movies of naked people.

The same day, Dominguez gave a statement following advisement of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436. Dominguez initially denied touching D.C. and claimed she was accusing him of something someone else had done to her. Eventually, Dominguez admitted he put his hand under D.C.'s clothing and directly on her vagina while he watched a pornographic movie with her. He denied inserting his finger in her vagina, but admitted separating the labia of her vagina. He claimed this was a single incident and he stopped once he realized what he was doing.

G.T. testified D.C. complained Dominguez had touched her vaginal area over clothing with the flat of his hand. G.T.'s daughter testified D.C. told her Dominguez grabbed her while she and Dominguez watched a "nasty movie." D.C. showed G.T.'s daughter how Dominguez used a flat palm and touched D.C. over, or on top of, her pants. D.C. said nothing about pain. Later that day, D.C. complained "her thingy was hurting."

## PROCEDURAL HISTORY

Dominguez was initially charged only with committing a lewd act with a child under the age of 14, a crime with a sentencing range of three, six, or eight years. (§ 288, subd. (a).) However, after the preliminary hearing, Dominguez was also charged with orally copulating or sexually penetrating a child under 10, a crime which carries a mandatory sentence of 15 years to life. (§ 288.7, subd. (b).)

The case went to trial. Near the end of the trial, the court referred to a prior unreported chambers conference and allowed defense counsel, Alex Perez, to make the following statement on the record:

"Thank you very much, your honor. [¶] I did want to make it clear for the record that prior to the preliminary hearing in this matter I was the attorney of record, and at that time the deputy district attorney on that case was a different attorney than Ms. Nichols, who is now in court on this case. And at that time there was an offer of six

3

years.  And I was not told that that offer would go away, would seize [*sic*] to exist after [the] preliminary hearing.  Unfortunately that's exactly what occurred, and right after the preliminary hearing.

"So attorney number one on the case told me about the offer.  Attorney number two then did the preliminary hearing.  And Ms. Nichols is attorney number three in the case.

"So attorney number two did the preliminary hearing, and right after the preliminary hearing I inquired about the offer.  And that is when I discovered that it may not be available anymore and that he would inquire with attorney number one and let me know at the arraignment in C5.  And it was at that time later in C5 that I discovered that there was no offer.

"So I wanted to make the record that I did not understand that the offer would not be available after the preliminary hearing.  And that is in fact what occurred."

The trial court clarified Deputy District Attorney Jess Rodriguez was attorney number one, and Deputy District Attorney Mark Birney was attorney number two.  The court then sought input from the trial deputy, Deputy District Attorney Cynthia Nichols.  Nichols responded, "I have spoken with my colleagues when I got this case.  Prior to the preliminary hearing there was an uncharged life count.  Counsel was advised that there was an uncharged life count, that if we went to preliminary we would be adding that life count.  My colleagues left the determinate offer open until preliminary.  When the prelim occurred the life count was added on the information, as had been explained to counsel would happen."

Nichols further stated, "It is the practice of the district attorney's office to always look at cases on an individual basis.  We advised Mr. Perez that there was the potential of filing a life charge.  The offer of the determinate sentence was gone after preliminary hearing, as is the case with most cases, because an early resolution results in a lower sentence for practical reasons.  [¶] In this case we advised Mr. Perez of the

4

potential life count we would be adding. Once we have added the life count it doesn't mean that under no uncertain circumstances we would never come off life, but there would have to be evidence presented that would make us come off of that determination, which never made its appearance in this case."

When the trial court inquired whether the district attorney's file reflected that an offer had been made and its limited term explained, Nichols responded, "There is a note that says a determinate offer was made; that offer would not be available after prelim. I don't know if it was Mr. Rodriguez or Mr. Birney who made that offer. But I have talked to both of them personally, and they both told me that they advised Mr. Perez that the offer would be gone once the life allegation was added – or the life count was added, I should say."

The court then asked Perez how long he had been practicing criminal law. Perez said that he had been practicing criminal law in Orange County for about 15 years. Then the court observed, "it does not surprise me that any offer made before preliminary hearing is a pre-preliminary hearing offer and does not survive preliminary hearing because it's an inducement for a defendant to enter into an agreement with the prosecutors at an early stage of the proceedings to avoid a harsher penalty. [¶] I indicated to you that it was my experience in 22 years of judging and judging primarily in the criminal arena that all pre-preliminary hearing offers tend to go away by the time there's an information filed in Department C5. So I was surprised that you didn't reasonably anticipate that the offer would be of short duration."

Perez responded, "Just to clarify, I think that there was some communication or a misunderstanding because of the switch over of attorneys between Mr. Rodriguez and Mr. Birney as to whether the offer would remain after prelim. And I was not advised of that, so I didn't advise my client of that . . . . [¶] . . . [¶] I did extend the offer. But in my mind there wasn't that kind of limit on it, and with all due respect to Ms. Nichols, I think that if she had been the attorney at the time we wouldn't be sitting

5

here now because it would have been clear to me, and we would have communicated about it . . . . [¶] . . . Had I known the offer was going away and it was changing from six years to life, I would have definitely told my client . . . . [¶] That's a huge jump. It's not six years to eight years or eight years to ten years. It's a huge, huge jump. And I would have told him about that. And it would have been different."

A declaration Perez filed in support of the habeas corpus petition stated Rodriguez made the offer, but did not tell Perez the offer would expire before the preliminary hearing. Perez told Dominguez about the offer, but did not make any recommendation. Furthermore, Perez declared neither Rodriguez, nor Birney advised him Dominguez would face a potential life term after the preliminary hearing, and Perez never advised Dominguez of this possibility.

A declaration Dominguez filed in support of the habeas corpus petition stated Perez never told him the six-year offer would expire after the preliminary hearing. Dominguez declared Perez advised him to take the plea offer *after* the preliminary hearing. However, Perez later told Dominguez the deal was no longer available. Dominguez said Perez never advised him of the possibility a charge carrying a life sentence would be added after the preliminary hearing.

## DISCUSSION

Dominguez argues he received ineffective assistance of trial counsel in connection with the People's six-year plea offer. The Attorney General concedes Dominguez's petition states a prima facie case for habeas corpus relief. We agree.

*1. Applicable Law and Standard of Review*

A criminal defendant's Sixth Amendment right to counsel includes the effective assistance of counsel during plea negotiations. (*Lafler v. Cooper* (2012) __ U.S. __, [132 S.Ct. 1376, 1385] (*Lafler*); *Missouri v. Frye* (2012) __ U.S. __, [132 S.Ct. 1399, 1406-1407] (*Frye*); *In re Alvernaz* (1992) 2 Cal.4th 924, 933 (*Alvernaz*).) Such claims

6

are governed by the two-part test set forth in *Strickland v. Washington* (1984) 466 U.S. 668 (*Strickland*).  (*Lafler*, at p. 1384; *Frye*, at p. 1405; *Alvernaz*, at pp. 936-937.)

A defendant must show both deficient performance (representation fell below an objective standard of reasonableness, and prejudice (reasonable probability of a more favorable result in the absence of counsel's unprofessional errors).  (*Strickland*, *supra*, 466 U.S. at pp. 688, 694; *Alvernaz*, *supra*, 2 Cal.4th at pp. 936-937.)  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, at p. 694.)

In the context of plea bargaining, "a defendant must show the outcome of the plea process would have been different with competent advice.  [Citations.]" (*Lafler*, *supra*, 132 S.Ct. at p. 1384.)  To prevail, a defendant must show that but for the ineffective advice of counsel, (1) there is a reasonable probability the plea offer would have been presented to the trial court (i.e., the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), (2) the trial court would have accepted its terms, and (3) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.  (*Id*. at p. 1385.)

"In determining whether a defendant, with effective assistance, would have accepted the offer, pertinent factors to be considered include:  whether counsel actually and accurately communicated the offer to the defendant; the advice, if any, given by counsel; the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer; and whether the defendant indicated he or she was amenable to negotiating a plea bargain.  In this context, a defendant's self-serving statement—after trial, conviction, and sentence—that with competent advice he or she *would* have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be

7

corroborated independently by objective evidence." (*Alvernaz, supra*, 2 Cal.4th at p. 938.)

2. *The Prima Facie Case for Writ Relief and Further Proceedings.*

The petitioner in a habeas corpus proceeding bears the initial burden of demonstrating ineffective assistance of counsel. (*People v. Haskett* (1990) 52 Cal.3d 210, 248.) Dominguez has met his initial burden. Perez's alleged unawareness of, and failure to communicate, the limited nature of the plea offer constitutes representation below an objective standard of reasonableness. (*Strickland, supra*, 466 U.S. at pp. 688, 694.) Thus, the petition makes a prima facie showing sufficient to initiate further proceedings, and we will issue an order to show cause returnable to the superior court. (*Rose v. Superior Court* (2000) 81 Cal.App.4th 564, 573-574 (*Rose*).)

But the issuance of the order to show cause merely initiates the process of resolving the habeas petitioner's claim. (§ 1475; Cal. Rules of Court, rule 8.384; *Rose, supra,* 81 Cal.App.4th at p. 573.) Following the issuance of the order to show cause, the burden shifts to the People to make factual allegations by way of a return. (*Rose*, at p. 573.) "The return and traverse to the order to show cause are the means by which issues are joined and defined. [Citation.] Once joined, the truth of disputed allegations may be determined through an evidentiary hearing. [Citations.]" (*Id.* at pp. 573-574.)

## DISPOSITION

The petition for a writ of habeas corpus in case number G049746 is severed from the direct appeal in case number G048840 for all purposes. Let an order issue, commanding respondent to show cause why the relief requested in the petition for habeas corpus should not be granted. The order to show cause shall be returnable to the Orange County Superior Court, at a time and place to be designated by that court.

In light of our order to show cause regarding the petition for habeas corpus, the direct appeal in case number G048840 is dismissed as moot.


THOMPSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


IKOLA, J.